### J. B. SHERAR V. THE STATE.

*No. 3802.     Decided November 14.*

1. **Continuance—Drunkenness.**—Where an application for a continuance sought to procure testimony that defendant was drunk a short time previous to the homicide, *held*, that the same was properly overruled, because immaterial, there being no issue of temporary insanity produced by the recent use of intoxicating liquors raised by the facts set up in the application.

2. **Evidence—Irrelevant and Immaterial.**—On a trial for murder, where defendant as a witness in his own behalf had testified that he had no recollection of shooting deceased or any one else, and it further appeared that at the time of his arrest he had stated to the officer that "he was not aware of having had any trouble with anybody that night, nor that he had shot any one," *held*, that the court did not err in refusing to permit defendant to further testify that several hours before the homicide he had a difficulty with one K., in which K. attempted to shoot him in the back with a pistol, such evidence being both immaterial and irrelevant, without other evidence to show that defendant mistook deceased for K.

3. **Special Instructions—Practice.**—It is not error to refuse special requested instructions where the same are not called for nor authorized by the evidence in the case.

4. **Murder—Express Malice.**—To constitute murder upon express malice, it must be shown either that the slayer acted with such utter and reckless disregard of human life as would constitute him an enemy to all mankind, or that he acted with a sedate and deliberate mind, as well as with a formed design, and with particular malice toward deceased.

5. **Same.**—Where the act of killing is the result of a rash, sudden, and immediate conception, springing from an inconsiderate impulse, passion, or excitement, however unjustifiable and unwarranted, it would not constitute murder upon express malice.

6. **Same—Evidence Insufficient to Show Express Malice.**—See the opinion for a statement of facts held insufficient to establish a murder of the first degree upon express malice.

APPEAL from the District Court of Bell. Tried below before Hon. W. A. Blackburn.

Appellant was jointly indicted with one S. C. Walker for the murder of John Mallory, which crime was alleged to have been committed on December 23, 1890. His codefendant S. C. Walker had been previously tried and convicted of murder in the second degree, and punishment assessed at ten years in the penitentiary. This appellant's trial resulted in his conviction of murder in the first degree, with a life term in the penitentiary assessed as his punishment. A substantial statement of the facts in the case will be found in the companion case of Walker v. The State, reported in 29 Texas Court of Appeals, 621, in connection with the facts stated in the opinion on this appeal.

*Monteith & Furman*, for appellant, filed an able brief and argument (without citing any authorities), in which the main proposition was, "that the evidence not only does not make a case of murder in the first degree, but is conclusive that the essential ingredient of murder in the first degree is lacking."

*R. H. Harrison*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement for life in the penitentiary.

1. Appellant moved for a continuance of his case for the testimony of one Tom Herd, by whom he expected to prove that he (appellant) was drunk a short time previous to the homicide. The court overruled the motion, and appellant excepted. The facts set out in the application were abundantly proved, in so far as the same related to the fact that appellant was drunk at the time stated in the application. There was no contradiction on that phase of the evidence, and it was not denied nor contested by the State. But we are of opinion that the court in overruling the motion did not err, because the testimony was immaterial, there being no issue of temporary insanity produced by the re-

cent use of intoxicating liquors raised by the facts set up in the motion. Willson's Crim. Stats., sec. 92; Clore v. The State, 26 Texas Ct. App., 624; Ex Parte Evers, 29 Texas Ct. App., 539.

2.  Appellant offered to prove by himself that several hours before the homicide alleged in the indictment he had a difficulty with one Kelly, in which Kelly sought to shoot him in the back with a pistol. Over objection of appellant this testimony was excluded by the court. Where a person is on trial for an offense, all facts are admissible against him that sustain any hypothesis which implies his guilt.   It is equally true that all facts and every fact that would sustain his defense or his innocence, or mitigate the offense, would be admissible in his favor. "All facts which go either to sustain or impeach the hypothesis are legally pertinent or admissible.  But no fact is relevant which does not make more or less probable such an hypothesis."  Whart. Crim. Ev., sec. 2324; Hobbs v. The State, 16 Texas Ct. App., 517; Leggett v. The State, 21 Texas Ct. App., 382.

Do the facts offered in evidence tend to sustain any issue in the case, or any hypothesis which implies appellant's innocence, or that would mitigate his offense?  If so, it was admissible; otherwise it was not admissible.   Looking to the evidence, we find that deceased was in no way connected with the difficulty between the appellant and Kelly, and that the appellant did not think nor believe that the deceased was Kelly at the time he shot him.   The evidence does not engender the idea that appellant was laboring under a mistake of fact that deceased was Kelly, with whom he had the former trouble.  The evidence does not make it appear that appellant's former trouble was upon his mind at the time of his trouble with deceased.  Appellant testified that he had no recollection of shooting deceased, nor any one else.   At the time of his arrest, appellant stated to the officer that he was not aware of having had any trouble with anybody that night, or that he had shot any one.   If appellant had made a mistake, and shot deceased, thinking it was Kelly, the evidence would have been legitimate as a fact tending to reduce his act to an inferior degree of homicide from murder in the first degree.

But it would be difficult to realize how a fact unknown to a party, or an impression he did not have, could have affected him in performing an act in ignorance of that fact and without that impression.  Without something to indicate that appellant mistook deceased for Kelly, or that in his mind and thought deceased became identified with Kelly in some way, the fact that there had been a previous difficulty between himself and Kelly was not a circumstance relevant to the act of appellant in shooting deceased, nor could it tend to elucidate the conduct of appellant with reference to such shooting, nor could it have justified or mitigated the act of appellant in killing deceased.  When it is sought to show that rejected testimony is relevant to some issue involved in the case, some connection should be shown between the issue and the

rejected testimony, or it must be shown that the rejected testimony has some bearing on some issue involved in the case. This was not done in this case. Same authorities.

3. Appellant prepared and requested the court to give special instructions embodying the law of justifiable homicide. The court refused to do so. We are of opinion that the facts incorporated in the record do not call for nor authorize a charge upon that phase of the law, and that the evidence does not raise the issue of justifiable homicide.

4. One of the grounds of the motion for a new trial is predicated upon the alleged insufficiency of the evidence to sustain the verdict for murder in the first degree. It is insisted that the evidence not only fails to prove express malice, but that it excludes that phase of malice from the case. The testimony on this branch of the case is substantially as follows: About 7 or 8 o'clock in the evening, and a short time previous to the homicide, appellant and S. C. Walker left their saloon *en route* to the home of appellant, in the town of Temple. After proceeding some distance up the street, they started across the street to the opposite or western side. One of the State's witnesses testified as follows: "This crossing was formed of two twelve-inch planks, laid flat, and one twelve-inch plank on each side, laid slanting down, and the crossing was wet and slippery. John Mallory (the deceased) started ahead on the crossing. I followed. At about a third of the way across we overtook three men, who were also going west. They were walking in single file. An unknown man to me was in front. Sam Walker was next, and James Sherar, the defendant, was next. They were walking in the same direction we were, but were not going quite as fast as we were. We were in no special hurry to go anywhere. I did not know Sherar at the time by name. He is a one-armed man. As we came up behind them, John Mallory (the deceased) started to pass Sherar on the south side, slipped, and stumbled, and fell against the one-armed man from the side. This caused John Mallory to stagger off of the sidewalk to the south of the one-armed man. As John fell against him he muttered something I could not understand, and turned suddenly and drew a pistol and shot John. He drew the pistol, seemingly a 45 Colt's revolver, from his waist in front, and presented it at John Mallory, and fired as quick as he could draw it. Except his muttered words, nothing was said by any one present before the shot. * * * I did not see Sherar try to shoot a second time. I saw no one try to keep him from shooting a second time." Deceased ran from the scene of the trouble, whereupon appellant went on across the street and ultimately home, where he was arrested some hours later.

Do these facts constitute murder of the first degree, or do they prove express malice? We think not. The meeting between the parties

was accidental; they were apparently strangers to each other; there is no evidence of any former troubles between them; and there was nothing to indicate that appellant knew of the presence or existence of deceased until he stumbled and fell against him. There is nothing to indicate that had Mallory remained behind appellant, and not tried to pass him, the unfortunate homicide would have occurred. There was but one shot fired, and no interference to prevent a second shot.

To constitute murder upon express malice, it must be shown that the malice was directed toward the deceased, or it must have been embraced in the acts and conduct of the slayer in such manner as to indicate such utter and reckless disregard of human life as shows the slayer to be an enemy to all mankind. Under the latter state of case, the party guilty of the homicide may be well said to have malevolence toward the particular individual slain. A sedate and deliberate mind, as well as a formed design, must accompany the act of the slayer in the commission of the homicide in order to constitute murder upon express malice. But if the act of killing be the result of a mere rash, sudden, and immediate conception, springing from an inconsiderate impulse, passion, or excitement, however unjustifiable and unwarranted it may be, it would not constitute murder upon express malice, because the sedate and deliberate mind is wanting, and without that condition of the mind there can be no express malice. When the act of killing has its inception in an inflamed and excited mind, which is not capable of such sedate and deliberate action as is compatible with express malice, and which act is carried into immediate execution, and before there has been time for the cooling of the passion, or for the excitement to abate, the killing, under such conditions, would not be murder upon express malice. The law, however, does not prescribe any length of time in which malice may be engendered. If the mind be cool the malice may be formed in a moment of time, even as quick as the working of the intellect or the conception of thought. These matters must be relegated to the facts attendant upon the particular case.

In applying these principles to the facts of this case, we are of opinion that the conviction of murder in the first degree is not supported nor sustained by the evidence, and should be set aside. The evidence as found in the record does not support the verdict as found by the jury. We have found no objection to the charge. It is a clear and full presentation of the law of the case as made by the facts.

For the error indicated, the judgment is reversed and the cause remanded.

<em>Reversed and remanded.</em>

Judges all present and concurring.