JOHN EASON v. THE STATE.

No. 6130.   Decided May 11, 1921.

Rehearing denied June 24, 1921.

1.—Murder—Manslaughter—Lecture to Jury—Practice in Trial Court.

It is not proper for the trial court to tell a venire from which a jury is to be drawn that any law whose application is sought by the accused in any case to be tried by said jury has been abused and badly so; nor should the jury be warned against disqualification on such voir dire because of prejudice against the named law, etc. However, in the absence of a motion to quash the panel, and that the defendant was given the right to challenge for cause, there was no reversible error.

2.—Continuance—Threats by Deceased—Bill of Exceptions.

It is statutory that the application for continuance must not only set out the facts expected from the absent witness, but must also make it appear that they are material, and the record on appeal showing that it nowhere appears that at the time of the homicide the deceased had done or was doing anything manifesting an intention to execute any threat theretofore made by him, and this being the substance of the absent testimony, there was no error in overruling the application. Following Brooks v. State, 24 Texas Crim. App., 274, and other cases.

3.—Same—Continuance—State's Admissions—Threats.

Where it was admitted by the State's attorney that the alleged absent testimony of all of said absent witnesses was true except that of one certain witness, and said latter witness' testimony was immaterial as the alleged threats were not attempted to be executed, there was no reversible error.

4.—Same—Evidence—Clothing of Deceased—Course of Bullet.

Where, upon trial of murder and a conviction of manslaughter, the issue was made as to whether deceased was facing defendant when the

bullet entered his body or fleeing from him, there was no error, in connection with the testimony of a physician who examined the body of deceased, to introduce the clothing of the deceased worn at the time he was shot and to show that the bullet entered the back of the body.—

**5.—Same—Illicit Intercourse—Credibility of Witness—Rule Stated.**

Where, on cross-examination, defendant's wife was asked if deceased ever came to her house at any other time than on the two occasions to which she had testified in her examination in chief, to which she replied that he never had, there was no error to permit the State in rebuttal to prove that about a year prior thereto deceased had been seen visiting her home. One spouse testifying in behalf of the other may be impeached in the same way as any other witness. Following Magruder v. State, 35 Texas Crim. Rep., 214, and other cases.

**6.—Same—Evidence—Credibility of Witness—Cross-Examination.**

Where defendant's wife testified that the intercourse had with her by deceased on the occasion which she claimed to have narrated to the defendant the day before the homicide was without her consent, there was no error on cross-examination to show that this was not the case. Distinguishing Young v. State, 59 Texas Crim. Rep., 137, besides, the matter passed out of the case when defendant was convicted of manslaughter.

**7.—Same—Evidence—Impeaching Testimony—Manslaughter.**

Where defendant claimed an insult by deceased to his wife, there was no error in permitting the State to introduce testimony that defendant told the State's witness of an insult to the wife of defendant by another man prior to the homicide; besides, the conviction being for manslaughter, the admissibility of this testimony passes out.

**8.—Same—Witness under Rule—Discretion of Court.**

Where the witness was summoned after the trial began and came into court and remained there for some time, without the knowledge of anyone, the matter was within the discretion of the trial judge to permit him to testify.

**9.—Same—Misconduct of Jury—Presumption—Practice in Trial Court.**

Where misconduct of the jury was set up, and the trial court heard evidence and found against the defendant, the presumption is in favor of the correctness of his ruling, and it appearing from the record that the alleged misconduct of the jury could have been of no injury to the defendant, there was no reversible error.

**10.—Same—Sufficiency of the Evidence—Rehearing.**

Where, upon trial of murder and a conviction of manslaughter, the evidence sustained the conviction under a proper charge of the court, there was no reversible error.

**11.—Same—Continuance—Motion for New Trial—Threats—Self-defense.**

Where appellant contended in his motion for rehearing that he should have been granted a continuance, but the record showed that this court was justified in concluding that the matters of testimony expected from the absent witness were not such as could have afforded any justification to the accused for killing the deceased under any claim of self-defense based upon threats, the motion for rehearing is denied.

Appeal from the District Court of Van Zandt. Tried below before the Honorable Joel R. Bond.

Appeal from a conviction of manslaughter; penalty, two years' imprisonment in the penitentiary.

The opinion states the case.

*Wynne & Wynne,* for appellant.—On question of overruling motion for continuance under subject of threats: Hunnicutt v. State, 20 Texas Crim. App., 632.

On question of defendant's wife's testimony as to visits made by deceased: Young v. State, 127 S. W. Rep., 1058; Jones v. State, 101 id., 993.

On question of misconduct of jury: McKissick v. State, 26 Texas Crim. App., 673; McDougal v. State, 194 S. W. Rep., 944; Gilbert v. State, 215 id., 106.

*R. H. Hamilton,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Van Zandt County of manslaughter, and his punishment fixed at two years' confinement in the penitentiary.

Appellant was charged with the murder of one Day Adrian. Without serious controversy as to the fact, appellant proved intimacy of deceased with his wife—communication of that fact to him, and the shooting of deceased by him shortly thereafter and apparently at the first meeting of the parties. A contention of self-defense, based on threats of deceased, and that he was about to make an attack on appellant at the time of the shooting, was also made. The record discloses that the law applicable to this issue was submitted so fairly by the trial court as that no exception was taken.

Appellant presented to the trial court his bill of exceptions taken to the court's general instructions to the jury upon their *voir dire,* with regard to the suspended sentence law. The bill as presented was refused, and in lieu thereof a bill was prepared by the court, which appears in the record. We do not believe it proper for the trial court to tell a venire from which a jury is to be drawn, that any law whose application is sought by the accused in any case to be tried by said jury, has been abused and badly so; nor should the jury be warned against disqualification on such *voir dire* because of prejudice against a named law, by any statement that they must not be misled by prejudice which may not be against said law but against the gross abuse thereof. The bill before us as prepared by the court was accepted by appellant, and he is bound thereby. It appears therefrom that after the remarks of the court as same appear in the bill, appellant was given the right to challenge for cause any juror who said he had a prejudice against the suspended sentence law. No motion was made to quash this panel for the reason that such lecture was given, or a different question might be before us. In this condition of the record we cannot say that the remarks of the court were injurious to appellant.

Appellant presented an application for continuance. In the qualification to his bill of exceptions to its refusal, the trial court states that it was admitted by the State's attorney that the testimony of all of said absent witnesses was true, except that of E. N. Morris. This witness was subpoenaed, and shown to be sick at the time of the trial. His testimony as set out in the application was substantially that deceased had admitted to him his intimacy with the wife of appellant, and had further stated that appellant had found this out, and that he either had to bump appellant off or the latter would bump him off and that he was fixed for appellant; further, that this conversation was communicated to appellant by said witness. In this connection we observe that there is testimony of other threats of deceased against appellant also shown to have been made and communicated to him. The application for continuance, after setting out the testimony expected of the absent witness Morris, states: "This evidence becomes material to the defendant's defense as he expects to show by other testimony that he never met the deceased, after this conversation until the time of the homicide." The only other statement in said application which could have reference to the materiality of the testimony of Morris was a general statement near the end of said application, which is as follows: "The defendant's defense in this case is that the deceased had seduced his wife and had carnal knowledge of her and at the time of the homicide it was the first time he had met the deceased after learning the facts in regard to the conduct of the deceased; coupled with his right of self-defense, threats, and the other provisions of the criminal statutes of the State of Texas which protect a defendant and are applicable to this case, thereby rendering the testimony of the above *witnesses* very material." It is statutory that the application must not only set out the facts expected from said absent witnesses, but must also make it appear that they are material. Subdivision 3, Art. 608, Vernon's P. C. The application must not only set out the facts expected, but must state such other facts as may be necessary to show the relevancy and materiality of the testimony desired. Wright v. State, 44 Texas, 645; Murphy v. State, 6 Texas Crim. App., 420; Martin v. State, 32 Texas Crim. Rep., 441; Shirley v. State, 37 Texas Crim. Rep., 475; Hinman v. State, 59 Texas Crim. Rep., 29. The accused has the burden of setting forth the facts in his application, in such manner as will make apparent the materiality of the absent testimony. Patton v. State, 58 Texas Crim. Rep., 231; Spicer v. State, 69 Texas Crim. Rep., 459, 154. S. W. Rep., 548. Applying what we have said as to the facts, which must be stated in the application, to the instant case, an examination of said application reveals that it no where states therein that at the time of the homicide the deceased had done or was doing anything manifesting an intention to execute any threat theretofore made by him. In the absence of some such showing in the application, the trial court was justified in concluding that evidence of threats by said absent witness Morris, would not be

89 Tex.—41

material, it being provided by Article 1143 of our Penal Code that threats afford no justification for a homicide unless the deceased when killed, by some act then done had manifested an intention to execute the threat so made. We think no error was committed in overruling the application based on the absence of the witness Morris. Nor do we think it error to overrule the motion for a new trial insofar as same was based upon error in refusing the continuance. Appellant was his own only eyewitness to the killing. He swore to a state of facts calculated to bring him within the rules of manslaughter. He testified that on the day of the killing he went to the postoffice from his place of business, passing by the store of deceased, and that returning he looked into said store and saw deceased, who was a good ways back in the store, and that as he started into the store door deceased turned toward him and "kinder dropped his hand down," and that he jerked his gun out and fired at him twice. Appellant said when he first saw deceased he was "kinder standing looking at the north end of the building," which building fronted west. In another portion of his testimony he said deceased was looking straight at him when he fired the first shot. On cross-examination as to the facts and his reasons for shooting, appellant gave the following testimony: "I went to the bank on the day of the killing to get a check cashed. As I passed the furniture store on my way to the postoffice, I just merely looked in; I didn't know whether Day Adrian had returned or not; I wasn't hunting Mr. Adrian. As I came back by the store, I saw him and stopped there and I had the whole thing on my mind when I stopped there— the whole thing was just working on me and I really didn't know— the whole thing was on my mind; he had threatened to kill me, and the way he acted when I looked at him and he looked at me, I just shot him. The whole thing, the threats he had made and his being too intimate with my wife, was on my mind; that he had been too intimate with my wife was on my mind very badly, and I was all torn up about that, and these men had told me he had threatened to kill me and to watch him, and the whole thing was on my mind. I stopped in front of his store because I saw him in there and intended to go in there and see him; I did not shoot him because he looked at me, but because he had made all these threats and wrecked my home and I was all torn up like any other man would have been—the whole thing was on my mind; he had made threats that he was going to kill me and he had been too intimate with my wife. While he was standing with his side towards me when I shot him, he was looking as straight at me as I am looking at you, and he had something in his hand; I don't know what it was. He had his hand up and as I looked at him he kinder dropped it down to his side; I did not know that it wasn't a pistol he had in his hand. He was standing close to a bed. The reason I didn't say anything to him as I had intended to do was that I just went all to pieces when I saw him, on account of the threats he had made and what he had done to my wife—I just went all to pieces. I

don't believe I said a word to Adrian." The store-house of deceased was about eighty feet long, and there were several men in same at the time of the killing. According to the testimony of these men deceased was about midway the building talking to a Mr. Neal when the first shot was fired. Mr. Neal said he and deceased were looking at some rugs hanging on the north wall of the store, and the left side of deceased was toward the front door where appellant was when he shot; that deceased at once turned and ran toward the rear. This witness said he fell to the floor as deceased ran, and that the second shot was fired about the time he went to the floor. Another of said men, Mr. Campbell, said he had been talking to deceased and Neal just prior to the shooting, and they had walked over to look at the rugs, and witness was looking at deceased when the pistol fired from the front; that deceased was facing southwest, having his side toward the front door and one hand on a bed; that deceased at once ran toward the rear and had gone but a little way when the pistol fired the second time. Mrs. Skinner was sitting in a car directly in front of the store of deceased at the time of the shooting and saw appellant when he stopped in front of the store, and said that he rested his gun against the wall of the building and fired twice, then walked on up the street without saying a word. Mr. Griffin was on the sidewalk in front of said store at the time of the shooting and said there was a sort of alcove opening from the street to the door of said store, and that appellant stepped up into this alcove and when within about a foot or eighteen inches from the wall he shot twice into the building and walked on off. The witnesses said no arms were found on or around the body of deceased. Giving to all this the most favorable consideration, we are unable to conclude that the jury could have believed from these facts that deceased had done any act or made any demonstration from which appellant, or any man, could conclude that he was about to execute a threat. There was some contention as to whether the prosecuting attorney admitted as true the testimony of the absent witness Sharp, but the affidavit of said witness was attached to the controverting replication of the State's attorney to appellant's motion for new trial, and in same said witness denied that she would have given the testimony stated to be expected from her. We uphold the refusal of a new trial based on the matter of continuance. Evidence of threats becomes of no value to appellant in the absence of some proof of a real or apparent attempt to execute same. Brooks v. State, 24 Texas Crim. App., 274; Penland v. State, 19 Texas Crim. App., 365; Ex parte Mosby, 31 Texas, 566; Howard v. State, 23 Texas Crim. App., 265.

Objection was made to the introduction of the clothing of deceased worn at the time he was shot. An issue was made as to whether deceased was facing appellant, when the bullet entered his body, or fleeing from him. The doctor who saw the body of deceased was introduced by appellant and testified that he thought the bullet entered the

left breast of deceased. On cross-examination he was shown by the State the coat and vest worn by deceased, and shown to be in the same condition as at the time of the homicide, and from his examination of same he testified that the fiber of the clothing appeared to be pushed in at the bullet holes in the back and pushed out at the bullet holes in front, and that from his examination of the clothing he would conclude that deceased was shot in the back. This witness stated that he had been practicing medicine for over thirty years and had had much experience in gunshot wounds. We think it no error to ask him the questions shown, on cross-examination, and that the same general experience which would qualify him to express an opinion as to the entry and exit of a bullet in the body, would also qualify him to express his opinion as to the same matter with regard to the clothing, if indeed such testimony requires as a predicate that knowledge and experience which is ordinarily deemed necessary to an expert witness.

On cross-examination appellant's wife was asked if deceased ever came to her house at any other time than on the two occasions to which she had testified in her examination in chief. She stated that he never had. The State was permitted in rebuttal and as impeachment of her, to prove that about a year prior thereto deceased had been seen visiting her home. If this was material at all, in view of the fact that appellant testified that about a year before the fatal difficulty deceased lived next door to him and that the families visited each other, we hold it material as impeaching evidence. One spouse testifying in behalf of the other may be impeached in the same way and to the same extent as any other witness. Magruder v. State, 35 Texas Crim. Rep., 214; Taylor v. State, 74 Texas Crim. Rep., 3, 167 S. W. Rep., 856.

Mrs. Eason also testified that the intercouse had with her by deceased on the occasion which she claimed to have narrated to appellant the day before the homicide, was without her consent and permitted because she was afraid of deceased. On cross-examination she denied having put her little boy out of the house on said occasion. The State then proved by other witnesses that she did in fact put the little boy over the fence, and that when he came to the door presently he was unable to open it. This we think was legitimate cross-examination of the wife, and upon her denial thereof the State might prove the facts stated. She was asked if she knew a pistol belonging to deceased, but said she did not know he had one. We do not think the case of Young v. State, 59 Texas Crim. Rep., 137, 127 S. W. Rep., 0158, in point. The matters held objectionable in that case upon the cross-examination of the wife, were not pertinent to her testimony in chief, and bore materially upon the theory of self-defense as set up by the accused. In the instant case the jury having convicted of manslaughter, errors, if any, in matters of evidence affecting only that issue, would no longer in any event be considered reversible. Such is the testimony just discussed and set out in appellant's bills of exception Nos. 9 and 10.

The testimony of Jack Adrian to the effect that appellant told him of an insult offered to the wife of appellant by another man prior to the homicide in this case, and that appellant said he was going to make the man mentioned pay him money because thereof, would, if true, have affected the question as to whether the alleged conduct of deceased in the instant case with the wife of appellant, in fact caused the passion which might reduce a homicide to manslaughter; but in view of the fact that the verdict was manslaughter, the question of the admissibility of this testimony passes out. The rule was invoked by appellant as to the witness Adrian, but it appears that said witness was summoned after the trial begun and came into court and remained some hours without the knowledge of anyone apparently connected with the case. We do not think his being allowed to testify under the circumstances, such violation of the discretionary power of the trial court as would call for a reversal.

Misconduct of the jury was set up. The trial court heard evidence and found against appellant. The presumption is in favor of the correctness of his ruling. The statement attributed to juror Rusk in the jury room, if made, could have only affected an issue material to the question of manslaughter, which issue the jury have determined in appellant's favor. The weight of the testimony heard by the trial court in passing on said alleged misconduct, seems against appellant's contention as to prejudice expressed in the jury room against the suspended sentence law. If it appears affirmatively from the record that alleged misconduct of a jury could have been of no injury, this court will not reverse.

Further discussion of the facts herein would be of no value. The jury accepted appellant's theory that he was so aroused at the story of the invasion of his home by deceased as to be unable to resist the impulse to slay at his first meeting with him, and the jury gave to appellant the lowest punishment fixed by a merciful law for a homicide committed under such circumstances. We can not agree that the record shows appellant to have been denied a fair trial.

Finding no error in the record the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

June 22, 1921.

LATTIMORE, JUDGE.—We have carefully examined the facts in the light of appellant's motion for rehearing and the law applicable thereto as applied in the lower court and considered by us in our original opinion. We did not intend in said opinion to state that the application for continuance was so defective as that the court might not have considered same, but extended our discussion thereof, and intended to place our decision of the matters involved in said contin-

uance upon the ground of holding that the trial court was justified in concluding that the matters of testimony expected from the absent witness Morris were not such as could have afforded any justification to the accused for killing deceased under any claim of self-defense based upon threats which had been communicated to appellant by Morris. We wholly fail to find anything in the testimony upholding the proposition that anything was done by the deceased at the time of the homicide to induce a belief in the mind of appellant that the deceased was about to execute any threat. We have gone through each of the contentions presented by appellant in his motion and by oral argument in support thereof, but are constrained to believe that under the record it appears that appellant had a fair trial, and that the jury were justified in rendering the verdict which they did, and that no error was committed by us in our original opinion, and the motion for rehearing will be overruled.

*Overruled.*