### M. R. SMITH V. THE STATE.

No. 10019—Delivered May 19, 1926.

Rehearing denied November 24, 1926.

**1.—Murder—Continuance—Diligence Insufficient—Properly Refused.**

Where an application for a continuance is presented on account of the absence of four witnesses, one of whom is shown to be under indictment for the same offense that appellant was on trail for, another shown to be present during the trial, and not used, while two of said witnesses were not found, the sheriff's return on said subpoenae having been made six days before the close of the case, and no further effort to secure the attendance of such absent witnesses being shown, the diligence was not sufficient, and there was no error in refusing the continuance.

**2.—Same—Continuance—Practice on Appeal.**

In passing upon the sufficiency of a motion for continuance which has been denied by the trial court, this court will presume that the ruling of the trial court in such matter is correct, unless the contrary is made to

appear, and in this instance, from the record as presented, this court is unable to conclude that the action of the trial court on the application was erroneous. Following Marta v. State, 193 S. W. 326.

### 3.—Same—Evidence—Self-Serving Declarations—Not Admissible.

Where, on a trial for murder, appellant complains of the refusal of the court to permit a witness to testify that on Sunday night preceding the killing, which occurred on the following Wednesday, appellant told said witness he was going to see the deceased, and make deceased apologize to him and to his wife for his insulting conduct to appellant's wife, such statements, if made by appellant, were self-serving and properly excluded.

### 4.—Same—Evidence—Cross-Examination—Held Proper.

Where appellant had introduced a witness who testified to statements made to him by appellant on Sunday night, preceding the killing on Wednesday, there was no error in permitting the state on cross-examination to ask said witness if the appellant did not state in said conversation referring to deceased, "The damned rascal is now sitting across the street in his car, he and Frank Fallis." Said cross-examination was proper, and did not call for a conclusion of the witness.

### 5.—Same—Evidence—Wife as a Witness—Cross-Examination—Held Proper.

Where appellant had introduced his wife as a witness in his behalf, and she had testified to the undue familiarity of the deceased with her, and his attempt to have intercourse with her, it was proper on cross-examination to permit the state to prove by her, and as a predicate for her impeachment, that she had made statements to numerous witnesses contradictory to her evidence given on the trial. The wife, when proffered by the husband, on trial, is subject to impeachment the same as any other witness. Following Exon v. State, 33 Tex. Crim. Rep. 468, and other cases cited in Branch's Ann. P. C., Secs. 152 and 153.

### 6.—Same—Continued.

Where the wife had testified in appellant's behalf to improper conduct toward her by deceased, there was no error in permitting the state to prove that the wife, prior to the homicide, had stated to witness that deceased had never insulted her, and that her husband, the appellant, was going to kill the deceased on account of deceased having told her of appellant's conduct with other women. This cross-examination of the wife was proper for inpeachment purposes. See Bell v. State, 85 Tex. Crim. Rep. 638, and other cases cited.

### 7.—Same—Evidence—Misconduct of Deceased—Specific Acts — Inadmissible.

Where, on a trial for murder, there was no error in excluding testimony offered by appellant of specific acts of misconduct of the deceased with other women, that he had heard about, and what deceased had told him relative to such improper relations with women.

### 8.—Same—Evidence—Cross-Examination of Defendent—Held Proper.

Where the state's theory was that the killing grew out of animus aroused in appellant's mind by statements made by deceased to appellant's wife, of acts of misconduct of appellant with other women, it was proper

to permit the state to prove by appellant on cross-examination that he had been guilty of such improper conduct with other women. See Redmond v. State, 108 S. W. 365, and other cases cited.

### 9.—Same—Remarks of Counsel—Harmless Error.

Where counsel for the state, while arguing a question of testimony before the court in the presence of the jury, stated that Jack Combs was indicted for the same offense as appellant, and upon objection being raised thereto, the court promptly instructed the jury to disregard the remark, no harmful error is presented.

### 10.—Same—Evidence—Held Admissible.

Where appellant had testified that at the time he shot deceased he thought deceased was armed, and was preparing to draw a pistol, there was no error in permitting the state to prove that after the homicide the pistol of deceased was found in his office.

### 11.—Same—Requested Charges—Properly Refused.

Where the court's general charge and requested charges given the jury properly cover and correctly present all of the issues raised upon the trial, no error is presented in the refusal to give other special charges, although they are properly presentable.

#### ON REHEARING.

### 12.—Same—Insult to Female—When Available as a Defense.

Where, on a trial for murder, appellant testified that he heard of insulting conduct of deceased toward his wife on Saturday night before the killing on Wednesday. That he and deceased were together till a late hour on this night, and though armed, that he did not demand an explanation of deceased, nor attack him. That on the following night he obtained full details of the alleged insulting conduct from his wife, and thereafter on the same night he saw the deceased twice. That on the following Wednesday he met deceased, who went to appellant's home at appellant's invitation, and denied that he was guilty of any misconduct in the presence of the wife, and on appellant demanding an answer to the denial of the deceased as to the misconduct, the wife replied, "I haven't lied." Whereupon appellant immediately shot and killed deceased.

### 13.—Same—Continued.

Our statutes provide that when one seeks to reduce a homicide to manslaughter, because of insulting words or conduct by the party slain to a female relative of the slayer, it must appear that the killing occured immediately following the insulting words or conduct or at the first meeting of the parties after the slayer is informed of same. At the first meeting means the first time the parties are in proximity under such circumstances as would enable the slayer to act in the premises. Following Pitts v. State, 29 Tex. Crim. App. 377.

### 14.—Same—Evidence—Properly Rejected.

The testimony in this record is plain and undisputed that appellant did not kill deceased on his first meeting after being told by his wife of the insulting conduct. The statements of the deceased immediately preceding the killing could not be deemed fresh insulting words or conduct.

Under the facts presented, testimony offered by appellant of deceased's misconduct toward other women was properly rejected, without regard to the general proposition as to whether there might arise cases in which testimony of previous lewdness of the deceased would be appropriate.

### 15.—Same—Wife as Witness—Cross-Examination—Held Proper.

Appellant's wife having testified in his behalf, as to acts of misconduct and insulting affronts directed to her by deceased, and also as to statements made to her by deceased concerning appellant, manifestly it was competent for the state to ask her on cross-examination with reference to statements made by her to others, which, if true, supported the proposition that deceased's conduct with her had always been proper.

### 16.—Same—Continued.

It is not the intent of our statutes or decisions to hold that cross-examination of the wife of the accused must relate to words or expressions used by her while giving her testimony in chief, but, on the contrary, the state may apply the usual method of cross-examining her as to all matters germane and pertinent to her examination in chief. Following Creamer v. State, 34 Texas 173, and other cases cited iin Branch's Ann. P. C., Sec. 152.

### 17.—Same—Bills of Exception—When Multifarious—No Error Shown.

It is well settled by the decisions that where a bill of exception groups objections which are tenable with those which are clearly admissible, and no direct or special challenge appears to be made to a particular matter, which might be otherwise objectionable, such bills are multifarious, and point out no specific errors. Distinguishing Drake v. State, 29 Tex. Crim. App. 265; Skaggs v. State, 21 S. W. 257, and Hobbs v. State, 53 Tex. Crim. Rep. 71.

Appeal from the District Court of Bosque County.    Tried below before the Hon. Irwin T. Ward, Judge.

Appeal from a conviction for murder, penalty 50 years in the penitentiary.

The opinion states the case.

*Calloway, Dalton & Calloway,* and *Basket & De Lee* of Dallas, for appellant.  In support of admissibility of appellant's statements to others of insulting conduct of deceased toward appellant's wife, cites:

Messer v. State, 43 Tex. Crim. Rep. 109.

Jones v. State, 38 Tex. Crim. Rep. 102.

Utzman v. State, 32 Tex. Crim. Rep. 430.

Hammond v. State, 28 Tex. Crim. Rep. 415.

*J. P. Word,* County Attorney of Bosque County; *Frank B. Tirey, H. J. Cureton; Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant was convicted of murder in the District Court of Bosque County, and his punishment assessed at 50 years in the penitentiary.

The appellant was indicted for killing Dr. J. Owen Carpenter, by shooting him with a pistol, about the 13th day of May, 1925. It was the contention of the state that the homicide was committed with malice and without provocation upon the part of the deceased, and upon a pretended and fancied grievance that the deceased had informed appellant's wife of his, appellant's, conduct and escapades with other women. It was the contention of the appellant that the deceased was guilty of improper conduct toward his wife; that the deceased, while visiting appellant's home professionally in his absence, attempted to kiss and fondle his wife, over her protests, and that on one occasion deceased threw her across the bed and sought to have intercourse with her by force, which she prevented by fighting him off. When his wife informed him of deceased's conduct, appellant's mind, according to his contention, was greatly agitated, enraged and incapable of cool reflection, and he took deceased in his automobile to his home and had deceased face his wife for the purpose of apologizing to her for said conduct. Upon reaching appellant's home, and his wife appearing in the presence of deceased, the latter denied any such conduct and insisted that appellant's wife state to him, appellant, that no such conduct occurred. Appellant's wife, according to his contention, there reaffirmed that what she had told him, appellant, was true, whereupon deceased again denied same, and was making a move in the direction of appellant, in a threatening manner, when the latter, in a passion of rage and resentment and under the belief that the deceased was then preparing to attack him or do him some serious injury, shot and killed him.

The record contains 28 bills of exception. In bill No. 1 complaint is made to the action of the court in refusing to grant appellant's application for a continuance in order that he might obtain the testimony of the witnesses, Simmons, Thomas, Matson and Combs. It appears from the record that Combs drove the deceased and the appellant, at the latter's request, in an automobile to appellant's home just before the homicide, and was indicted for the same offense for which the appellant was convicted, and was a fugitive from justice at the time of the trial. It further appears that the witness, Matson, appeared upon the trial before it was concluded, but was not used as a witness in the case. This leaves the question of the continuance to be con-

sidered only in connection with the alleged testimony of the witnesses, Simmons and Thomas. The application for a continuance shows that both of these witnesses resided in the town where the homicide was committed and in the county of the trial; that the indictment was returned into court on September 21, 1925; that the case was set down for trial on said date for September 30, 1925; that on September 22, 1925, subpoenas were issued for said witnesses, which subpoenas were returned into court by the sheriff on the 28th of September, showing that Simmons had "run away" and that Thomas was "not known." It is alleged in said application that the appellant expected to prove by said witnesses that he, appellant, had informed them between Sunday night, the day upon which he claimed his wife informed him fully concerning the deceased's conduct, and Wednesday following, the day of the homicide, of said insulting conduct and acts of the deceased toward his wife, and that at said time, he, appellant, was greatly agitated, excited and nervous, and that the witness, Simmons, advised him not to kill deceased, but to make him apologize to his wife for said conduct. The record further discloses that the court charged the jury six days after the motion for continuance was overruled, and that four days later the motion for a new trial was overruled. The attorneys representing the state contested the application for continuance, and contend before this court that the trial court was not in error in overruling same because the appellant did not use proper diligence, in seeking to have said witnesses subpoenaed or located after the process was returned into court showing that they had not been served, during the trial or up to the time of overruling the motion for a new trial, nor did appellant attempt to show, during said time, any probability of ever obtaining said testimony or locating said witnesses. In support of this contention the state cites the case of Marta v. State, 193 S. W. 326, which seems to bear out the state's contention. In this court it is presumed that the ruling of the trial court in such matters is correct, unless the contrary is made to appear, and in this instance, from the record as presented, we are unable to conclude that the action of the court on this application was erroneous.

In bill of exceptions No. 2 complaint is made to the refusal of the court to permit the witness, Price, to testify that on Sunday night, prior to the homicide on Wednesday, the appellant told the witness that he intended to see the deceased and make deceased apologize to him and to his wife for said conduct. The state objected to this testimony upon the ground that it was

self serving, and we are of the opinion that the bill, as presented, shows no error in the ruling of the court thereon.

Bill No. 3 complains of the action of the court, after the witness, Price, had testified to a conversation with the appellant on Sunday night, as above mentioned, and to the appellant's stating at said time, referring to the deceased, "The damned rascal is now sitting across the street in his car, he and Frank Fallis," in permitting the state to ask the witness, on cross examination, and have him testify that he did not see anything that would have kept appellant from making an attack on the deceased at that time. Appellant contends that said testimony involved a conclusion of the witness. We think this objection went more to the weight than to the admissibility of this testimony.

Complaint is made in bill No. 4 to the action of the court in permitting the state, on cross examination of appellant's wife, to interrogate her and have her testify to conversations between her and Mrs. Fort about two weeks prior to the homicide relative to some letters which she had obtained from her husband's pocket and which involved some other women, and to question her concerning a conversation which she had with the deceased about her husband's relations with other women, and concerning the deceased's treatment of her, and to an alleged conversation to the effect that her husband had told her that the deceased was telling her things about his, appellant's, conduct with other women in order to "get in with her," or for the purpose of insulting her, and to the state asking her if she did not state to Mrs. Fort that the deceased had always acted as a gentleman toward her and had never insulted her, and also if she didn't tell Mrs. Fort that her husband was going to kill deceased. This testimony was objected to by the appellant upon the ground that it was making his wife a witness against him on matters not brought out in chief. We are of the opinion that there was no error in the admission of this testimony, or laying the predicate for impeachment purposes of the appellant's wife. The appellant had introduced his wife as a witness in his behalf and she had testified to the undue familiarity of the deceased with her and his attempt to have intercourse with her, and to the deceased having told her about appellant's conduct with other women, and we think this testimony was clearly admissible upon the part of the state to show by this witness, on cross examination, if it could, that what she had testified to in chief as to the conduct of the deceased and what she had told her husband was not true, and we think said testimony was legitimate for that

purpose and was germane to the testimony given by her in chief, and she, having voluntarily taken the stand as a witness in behalf of her husband, was subject to impeachment the same as any other witness. Branch's Ann. P. C., Secs. 152 and 153, citing Exon v. State, 33 Tex. Crim. Rep. 468, 26 S. W. 1088; Brown v. State, 61 Tex. Crim. Rep. 334, 136 S. W. 265; Taylor v. State, 167 S. W. 59, and many other authorities.

By bills of exception Nos. 8 and 9 the appellant complains of the action of the court in permitting the state to prove by the witness, Mrs. Fort, that appellant's wife, a few days before the homicide, told her that she had letters which she had obtained from the pocket of her husband, without her husband's knowledge, and that said letters pertained to his association with other women, and that she knew that the deceased knew something about appellant's conduct with women and was going to make him tell her about it, and to the said witness, Mrs. Fort, testifying that in one conversation with appellant's wife she stated to the witness that her husband had told her that the deceased was just trying to "get on the good side of her" so he could mistreat her, and that she, appellant's wife, informed the witness that the deceased had always been a perfect gentleman toward her and had never insulted her, and told her that the appellant was going to kill the deceased on account of deceased having told her of appellant's conduct with other women, mentioning a certain woman in that connection, to all of which testimony appellant's counsel objected upon the ground that it was hearsay, and that same was beyond the scope of the proper cross examination on the testimony of defendant's wife in chief, and was making his wife a witness against him, and was not a proper basis for impeachment. We are of the opinion that this testimony was proper for impeachment purposes. Bell v. State, 85 Tex. Crim. Rep. 475; 213 S. W. 648; Eason v. State, 89 Tex. Crim. Rep. 638, 232 S. W. 300.

In bill of exceptions No. 5 complaint is made to the refusal of the court to permit the appellant to testify to what he had heard and what the deceased had told him relative to deceased's improper relations with women. This testimony was excluded, upon objection by the state, because same involved specific acts of alleged lewdness upon the part of deceased. We think there was no error in excluding said testimony of specific acts. See Spannell v. State, 83 Tex. Crim. Rep. 418, 203 S. W. 357; Bozeman v. State, 215 S. W. 319.

Bill No. 7 complains of the action of the court in permitting the state to prove by the appellant, on cross examination, that

he and one Schow were out at the park with some girls, and as to appellant's meeting a certain widow at a dance and taking her back to her home at McGregor, and also to the court's action in permitting the state, as shown in bill of exceptions No. 11, as rebuttal evidence to show by the witness, Nelson, that he saw appellant one night with a woman who was not his wife in his lap, while she was in an intoxicated condition, it being urged by the appellant that said testimony was prejudicial and was an attempt to prove other and different offenses, and that the court committed reversible error in allowing the state to introduce same to the jury. We think this testimony was admissible, and especially in rebuttal of the contention of the appellant as to his enraged condition of mind by reason of deceased having informed his wife as to his conduct with other women, and to his having been surprised at his wife asking him questions concerning his conduct in connection therewith. If what his wife had been informed about his conduct with other women was true, and the appellant contended that his mind became so enraged over the deceased having informed his wife of such conduct, then it was clearly admissible for the state to show, if it could, the truthfulness of said conduct. Redmond v. State, 108 S. W. 365; Teague v. State, 148 S. W. 1063; Parker v. State, 216 S. W. 178; Broussard v. State, 271 S. W. 385.

Bill No. 13 complains of the remarks of one of the attorneys representing the state to the effect that Jack Combs was implicated and indicted for the same offense as appellant. It appears that this statement was made while arguing a question of testimony before the court in the presence of the jury, and upon objection being raised thereto by the appellant, the court promptly instructed the jury to disregard said remarks. This bill as presented, we think, shows no reversible error.

Bill No. 12 complains of the action of the court in permitting the state's witnesses to show that after the homicide they found the pistol of deceased in his office. This testimony was offered by the state evidently in rebuttal of the appellant's testimony to the effect that at the time he shot the deceased he thought the deceased was armed and was preparing to draw a pistol. We think this evidence was admissible for the purpose indicated, as shown by this bill.

Bills 14 to 28, inclusive, complain of the refusal of the court to give appellant's special charges. We have carefully examined these charges and have reached the conclusion that there is no error shown in the ruling of the court, in view of the fact that the court's general charge and special charge No. 16, given at

the request of the appellant, properly cover, we think, all phases of the law raised by the testimony.

After a careful examination of this voluminous record and the exhaustive brief filed by the appellant, we have reached the conclusion that there is no reversible error shown in the trial of this case, and that the judgment of the trial court should be affirmed, and it is accordingly so ordered.

*Affirmed.*

The foregoing opinion by the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—From appellant's own testimony we find that he was informed of insulting conduct of deceased toward appellant's wife on Saturday night before the killing on Wednesday, but that she did not then give him full details. He admits that after getting this information he and deceased were at a party together till a late hour Saturday night, and that he was armed but demanded no explanation of deceased and made no attack on him. From appellant we learn that on Sunday night following said Saturday, he obtained from his wife full details of the alleged insulting conduct, and that thereafter on the same night he saw deceased sitting in a car talking with one Fallis, and also that a little later on said night he saw deceased get out of his car and sit down to talk with some other persons. On neither occasion did appellant say or do anything to deceased. From appellant's testimony also we are informed that on the day of the killing he saw deceased on the street, and put his pistol inside his overalls, walked out and met deceased. He testified that just before meeting deceased he pulled his pistol far enough out to let deceased see he was prepared, and then had a conversation with deceased, which ended in his demanding that deceased go with him to the wife of appellant and apologize for the way he had treated her, to which he says deceased agreed, and appellant called his partner Combs who drove them to appellant's home. Appellant testified further that on the way to his home he told deceased he thought deceased was too good a friend of his to do that to him; that deceased replied, "Smitty, I haven't done anything, I haven't done what you think I have done, Smitty," to which appellant says he replied, "I know what you have done." Appellant also testified that when they walked into his wife's presence deceased said, "Mrs. Smith, I didn't do that,

I didn't do that," and sat down, whereupon appellant said to his wife, "Norma, are the things you have told me about this matter true?" but that she began crying and made no reply. He says deceased kept begging her, saying he had not done that, and said again, "Mrs. Smith, I didn't do that, you know I didn't do that, tell him I didn't do that." He further stated that his wife then said, "I haven't lied" and that deceased started up from his chair and appellant fired rapidly, killing deceased almost instantly.

Our statute provides that when one seeks to reduce a homicide to manslaughter because of insulting words or conduct of the party slain, it must appear that the killing occurred immediately following the insulting words or conduct or at the first meeting of the parties after the slayer is informed of same. We have said in our decisions that the "first meeting" means the first time the parties are in proximity under such circumstances as would enable the slayer to act in the premises. Pitts v. State, 29 Tex. Crim. App. 377. This case has frequently been cited by us with approval. From the opinion in said case we quote:

"The law never intended to furnish a party with the opportunity and means of taking unlawfully the life of a human being. It is only in consideration of ungovernable passion that murder is reduced to manslaughter. Recognizing this infirmity in man, the law presumes such passion will assert itself on the first opportunity; and if the party happens to be or is intentionally armed after hearing of such insults, and he meets the wrongdoer, and being carried away by his passion slays him, the law mitigates the crime and punishment in consideration of the fact that his mind was incapable of cool reflection, and the offense becomes manslaughter instead of murder. It was never intended, and we trust never may be permitted, that an opportunity once being afforded for passion to assert itself, the injured party may afterward, coolly, calmly, and deliberately, select time, place, circumstances, weapons, and his own convenient opportunity, and then in revenge kill his victim without holding him guilty of murder." This applies with peculiar force in the case before us, and to appellant's insistence in his motion for rehearing that he should have been allowed to tell of particular instances of lewd conduct on the part of deceased of which he had heard prior to the homicide, said conduct being with other women. The testimony before us is plain and undisputed that appellant did not kill deceased on his first meeting after being told by his wife of the insulting conduct, and viewed in an effort to determine whether there be any fresh insult after such meeting and at the time of the killing,

—we fail to find same. On the way to the house of appellant deceased had repeated the statement that he had not done the things. Appellant did not then manifest any uncontrollable passion. After reaching said home deceased again stated that he had not done said things and called on appellant's wife to support this by telling appellant that he had not so done. Her reply was to say to appellant, "I have not lied," whereupon appellant shot and killed deceased. We are at some loss to perceive how the conduct or statements of deceased immediately preceding the killing could be deemed fresh insulting words or conduct, and must look to the preceding facts to determine whether appellant was in fact caused to do this killing as a result of passion which he could not control. Under facts such as are before us we have no doubt of the propriety of the rejection of the testimony referred to and deem it not necessary to discuss the authorities cited, or the general proposition as to whether there might arise cases in which testimony of the previous lewdness of the deceased would be appropriate.

Complaint is made of our disposition of appellant's fourth bill of exceptions. The wife of appellant was a witness testifying to the fact of the insulting conduct by deceased and its detailed communication to appellant; also that deceased repeatedly hinted at and told her of acts and conduct of appellant, indicating that he was untrue to his marital vows; also that deceased was their family physician at the time of and after the alleged misconduct on his part, and that most, if not all, of such conduct occurred and was repeated when he was on professional calls at her home, that by reason of information received from deceased she suspected her husband and charged him with misconduct with other women on numerous occasions. Manifestly it was competent for the state to ask her on cross examination with reference to statements made by her to others which, if true, supported the proposition that deceased's conduct with her had always been that of a gentleman; and if she had not derived her information and belief as to the misconduct of appellant with other women, from other sources than deceased, and, upon her denial of such facts, to ask her if she had not so stated. So also she might be asked questions bearing on her continued use of deceased's professional services after his first misconduct with her. We are not attempting to set out in detail the matters in the wife's testimony to which much of the cross-examination was pertinent. It may be that the questions to said wife as to whether she had not stated prior to the homicide that appellant was going to kill deceased, were improper, but she denied such

statements, and the objections of the appellant are all grouped in said bill and are made as much and for the same grounds to all of the matters therein complained of. A bill of exceptions is too general when it includes a number of matters, some of which are clearly admissible and no direct or special challenge appears to be made as to a particular matter which might be otherwise objectionable. Payton v. State, 35 Tex. Crim. App. 510; Gaines v. State, 37 S. W. 333; Tubb v. State, 55 Tex. Crim. Rep. 623; Cabral v. State, 57 Tex. Crim. Rep. 304; Solosky v. State, 90 Tex. Crim. Rep. 537. What we have just said also applies to appellant's bills of exception Nos. 8 and 9. In one of these he presents more than a page of the record setting out the testimony of Mrs. Fort, co-mingling that which was admissible with other parts that might be questionable, and if the bill speaks the facts, making the same objection to the whole of said testimony for the general reason stated, not one of which specifically refers to or points out the matter so strenuously here urged by appellant as erroneous. The precedents are too numerous and the rule is too sound and well settled in regard to the impropriety of such bills of exception. Appellant cites the Drake case, 29 Tex. Crim. App. 265; Skaggs v. State, 21 S. W. 257, and Hobbs v. State, 53 Tex. Crim. Rep. 71, but in neither of these is there a failure to call the attention of the court below to the error complained of, such as appears in the bill of exceptions before us, nor are any of the grounds of objection stated in bills of exception Nos. 8 and 9 based on what appears to be the only meritorious reason assigned for asserting that the objection is valid. We further observe that it is not the intent of our statute or decisions to hold that cross-examination of the wife of the accused must relate to words or expressions used by her while giving her testimony in chief, but on the contrary the state may apply the usual method of cross-examining her as to all matters germane and pertinent to her testimony as given on direct examination. This doctrine is not new. Mr. Branch in his valuable Annotated P. C., Sec. 152, cites Creamer v. State, 34 Texas, 173; Hampton v. State, 45 Texas, 154, and many other authorities in support of same.

The state's theory apparently was that appellant was incensed at deceased because of statements made by the latter to appellant's wife indicating and disclosing appellant's conduct with other women. Appellant's wife testified that deceased had made many such statements to her and that because of them she became suspicious of appellant, tried to find out from him what

his relations were with other women and charged him with same. She said that among other things deceased told her that he saw appellant and Spruce Schow with two girls and he supposed they were going to the park. It is a very significant fact that in her testimony as to what occurred at her house when appellant brought deceased there just before the shooting, Mrs. Smith testified that deceased said: "I didn't do that Mrs. Smith, you know I ·didn't do that," and that she replied, "You did tell me those things." Appellant also testified that his wife on various occasions prior to the homicide had accused him of being out with other women at lewd parties, and he said he was surprised because he did not know where she got the information. He also admitted that on several occasions shortly before the killing, he had asked her if deceased was not the one who had been telling her these things. Appellant made a confession shortly after the killing wherein appears the statement: "I told him that if he was man enough, to go before my wife and tell her the things he had said against me were false." Explaining what he meant by "tell her that the things he had said against me were false," appellant said he wanted him to tell her that the things he had said were false. These facts seem to us plainly to make material the proposition that the state might prove that appellant had in fact been out with other women at parties, and renders · ineffective appellant's objection as set out in bill of exceptions No. 7, wherein he complains that the state made him admit that he and Spruce Schow went down to the park with two women, and that he took one of them home; the state also asked appellant, and he admitted it, that he had borrowed a car and driven alone with a married woman, whom he had never seen before, from a dance at Clifton down to McGregor, and that he afterwards met said woman at Waco. In our opinion facts showing appellant to have done the things, report of which to his wife the state claimed to be the basis for his enmity toward deceased, would be admissible as supporting the state's theory of the case.

We have given careful study to the various authorities and contentions of appellant, but believing them not well supported, the motion for rehearing will be overruled.

*Overruled.*