## V. T. MEREDITH v. THE STATE.

1. An indictment for an assault "with intent *to kill* and murder," and other-
   wise in the usual form, is sufficient as charging an assault with intent to
   murder—rejecting as surplusage the allegation of intent to kill.
2. The presumption is in favor of the correctness of the ruling of the court
   in overruling a motion for continuance, unless the error is manifest by a
   bill of exceptions.
3. The declarations of the person upon whom an assault was made, made af-
   ter the difficulty, are irrelevant upon the trial.
4. Statements of defendant, made at the time of the difficulty, as to the
   reason why he had held the pistol so long on the assaulting party without
   shooting, *held* insufficient to require a new trial.
5. See facts held sufficient to sustain a verdict of guilty of an assault with
   intent to murder.

APPEAL from Johnson.   Tried below before the Hon.
Charles Soward.

*Amzi Bradshaw*, for appellant, insisted that the in-
dictment is insufficient to sustain a verdict for an assault
with intent to murder, citing 34 Texas, 636, The State v.
Archer; 34 Texas, 128, Moore v. The State; 25 Texas,
169, Wilson v. The State; 30 Texas, 163, The State v.
Hotchkiss; 20 Texas, 493, Hodges v. The State; 31 Texas,
175, Robinson v. The State; 21 Texas, 656, The State v.
Dorsett.

Following was an elaborate discussion of the facts.

*Geo. Clark, Attorney-General*, for the State, cited Pas-
chal's Digest, Article 2987; 19 Texas, 449, Cooper v. The
State; 23 Texas, 199, Brown v. The State; 18 Texas, 682,
Wall v. The State; 21 Texas, 337, Bruton v. The State.

REEVES, ASSOCIATE JUSTICE.—The indictment in this
case charges the defendant with making an assault with
intent "to kill and murder" one J. J. Harrell.

The appellant was tried and convicted and his punish-

ment assessed by the jury at two years confinement in the penitentiary.

His motion for a new trial and motion to arrest the judgment being overruled, he appeals.

The grounds relied upon for reversing the judgment will be examined in the order appellant's counsel has presented them in his brief.

The first ground is, that it does not appear from the indictment that any offense had been committed against the laws of the State.

In support of this ground we are referred to the case of Moore v. The State, 34 Texas, 138.

The facts of the case are not fully stated. It appears that the parties were required by their bail bond to appear and answer the charge of "shooting with intent to kill and murder," and it was held that the bond should have been quashed.

In the case of The State v. Archer, 34 Texas, 646, where the defendant was charged with an assault to kill and murder, the court said : "The indictment is insufficient to sustain a conviction for an assault with intent to murder, but is sufficient to support a conviction for a simple assault."

The case of The State v. Robinson, 31 Texas, 170, does not bear on this question, and was decided on a different ground.

The State v. Hotchkiss, 30 Texas, 162, was an indictment charging the defendant with "an assault with intent to kill and murder," and the offense was recited in the bail bond as "an assault with intent to kill." This case refers to Hodges v. The State, 20 Texas, 493, in which it was held that "an assault with intent to kill is an offense for which the accused might be convicted of the assault, if not also of the intent to murder;" and referring also to Wilson v. The State, 25 Texas, 169.

In this last case, Wilson was indicted for an assault

with intent to kill and murder. The recognizance described the offense as an assault with intent to kill. The court said: "There is no offense known by the name of an assault with intent to kill, yet such a description includes the offense of an assault, and the intent to kill may be rejected as surplusage."

Our opinion is, that the indictment in the case before us is sufficient as charging an assault with intent to murder, rejecting as surplusage the allegation of the intent to kill. The indictment is not obnoxious to the charge of duplicity, as it was held to be in the case of The State v. Dorsett, 21 Texas, 656. The indictment was for a willful and negligent escape, containing a description of two distinct offenses, and the jury could not have found the one or the other grade of offense, as they may do on indictment for assault with intent to murder. In the former the statute did not warrant such a finding; in the latter provision is made for it. "The jury, in every case arising under this chapter, may acquit the defendant of the offense charged in the indictment, and may, according to the facts of the case, find the defendant guilty of an aggravated assault, or of assault and battery, or of a simple assault, and affix the proper penalty to which such offense is liable by law." (Paschal's Digest, Article 2160.)

It is not made to appear that the court erred in overruling the motion for a continuance. It is not shown when the witnesses were subpœnaed. It is stated in the application for the continuance that the subpœnas were exhibited to the court, but the record does not show the date, and this court has no means of ascertaining the grounds upon which the District Court acted in overruling the motion. It may have been refused for that or some other reason not apparent to this court. There is no bill of exception to the ruling of the court, and nothing seems to have been done at the time showing an intention to rely upon the refusal to grant the continuance in this court

for reversing the judgment. And for want of it, the ruling of the court will not be revised. The reason of the rule is, that the judge may explain the grounds of his action in refusing the application, and the rule is the same in criminal and civil cases.

The presumption is in favor of the correctness of the ruling of the court, unless the contrary is shown by bill of exception. (Baker v. Kellogg, 16 Texas, 118; Hyde v. The State, 16 Texas, 453; Fowler v. Buckner, 23 Texas, 86; Harrison v. Cotton, 25 Texas, 53; Johnson v. Brown, 25 Texas Sup., 126.)

Proof of what Harrell, the person assaulted, may have said after the difficulty, whatever may have been implied, was not a matter that could have influenced the conduct of Meredith as affording any justification or excuse for his acts in view of the facts in evidence, and there was no error in excluding it from the jury.

The reason given by defendant why he held his weapon in his hand without shooting, so long after he drew it, as stated by the witness Scurlock on the application for a new trial, cannot avail him. This witness had already testified before the jury, and had stated that he was between the parties at the time Meredith drew his pistol and presented it, and that he ran out of the way, and then Meredith fired several shots. He could not have fired sooner, as appears from the evidence, without danger to Scurlock, and whom he did not desire to injure, as stated by this witness. Apart from this consideration, if the evidence had been before the jury, it would not have been a ground for a different verdict.

The charge of the court was as favorable to the defendant as he could have expected.

The jury were instructed that if Harrell (or Harrold, as he is sometimes called in the record) and the defendant "went into a mutual personal conflict, in which both used deadly weapons, then had death ensued from such con-

flict the party killing would have been guilty of man-
slaughter," and that the defendant was entitled to the ben-
efit of reasonable doubts, etc.   No exception was taken to
the charge, and no counter-charge was asked ; and not be-
ing discussed in the brief, it is not deemed necessary to
examine it more fully in all its parts.

The remaining inquiry relates to the verdict of the jury
under the evidence in the case.

It appears from the evidence that Harrell told Meredith
that he wanted to pay him some money on a certain
draft.   Meredith declined to receive the money on that
draft, but agreed to receive it on another draft.   "Har-
rell then told Meredith that he had acted the dog with
him," to which remark Meredith replied, "You are a
damned liar."   Harrell said that was something he never
had taken and never would take, and said Meredith must
take it back or fight, and placed himself in a fighting pos-
ture.   Other parties interfered and stopped the difficulty.
At a later period in the day it was renewed, when the
same or similar remarks were made by the parties ; the
defendant said, "Draw your weapons, if you have any;"
at the same time he drew a six-shooter and presented it.
The parties were about eighteen feet apart, and the wit-
ness Scurlock, as already stated, was between them, and
when he ran out of the way defendant fired several shots,
wounding Harrell in the arm.   This witness says he had
hold of Harrell, and that he could not at that time have
shot or hurt the defendant ; that Harrell did not draw or
attempt to draw his pistol until after Meredith had drawn
his and made the remark as above stated.

The witness Kuykendall corroborates in substance the
evidence of Scurlock.   He thinks Harrell was shot when
he raised his hand to draw his pistol; that Meredith drew
his pistol and presented it when he said to Harrell, "you
are a damned liar."

Though it is shown that Meredith told Harrell that he

had already left him to avoid a difficulty, and would do so again, yet there was no necessity to resort to the use of a deadly weapon for self-protection. The language used by the parties was insulting, and calculated to produce a difficulty, but there was no excuse in law for the attempt to take the life of his adversary for such a provocation. Both parties were acting in violation of the law in having deadly weapons upon their persons, without any apparent necessity to justify themselves. Scurlock, a peace officer, was present, and seems to have done what he could to prevent the difficulty. The defendant must have known that he was in no danger at the time he drew his pistol and presented it. His adversary was doing nothing to excite his fears, and could not have injured him, as testified to by the witness Scurlock. The evidence was not conflicting; the jury have found him guilty after a full hearing, so far as we can judge of the trial from the record; and under such circumstances this court would not be warranted in saying that their verdict was contrary to the evidence, or that the law has not been properly administered. The judgment of the District Court is therefore affirmed.

AFFIRMED.