For the reasons given the judgment is reversed, and the cause remanded.

---

## Ex parte CRAWFORD.   (No. 9023.)

(Court of Criminal Appeals of Texas.   Nov. 5, 1924.)

**1. Bail ⬤⟝43—Deceased's argument in brief for will contestants held not insult to female relative reducing killing to manslaughter.**

Attorney's argument, in brief for will contestants, that testimony indicated unconventional relations between testator and his wife before their marriage, probative of undue influence by her, *held* not expression of his personal view, but deduction from evidence in record, and hence not insult to female authorizing reduction of her son's killing of attorney,

on first meeting after reading brief, to manslaughter under Pen. Code, art. 1132, subd. 4, and article 1133, as respects son's right to bail.

**2. Bail ⬤⟝49—Burden on state to produce proof evident of guilt warranting denial of bail in capital cases.**

Burden is on state to show proof evident of guilt, to warrant denial of bail in capital cases, under Const. art. 1, § 11, and Code Cr. Proc. art. 342.

**3. Bail ⬤⟝43—"Killing on express malice" defined.**

As respects right to bail, killing on express malice is killing resulting from act done, pursuant to formed design, with sedate and deliberate mind to kill deceased or inflict on him, by some unlawful act, serious bodily harm, which might probably result in his death.

**4. Bail ⬤⟝43—Matters considered in determining whether killing was on express malice, warranting denial of bail, stated.**

State of accused's mind and cause thereof at time of killing and when design was formed, continuing condition thereof until design was executed, and manner of carrying it out, must be considered in determining whether killing was on express malice, warranting denial of bail; sedate and deliberate mind, as well as formed design, accompanying slayer's act, being necessary to constitute murder upon express malice.

**5. Bail ⬤⟝49—Proof evident of capital offense warranting denial of bail, held not shown.**

Proof evident of capital offense for which bail should be denied under Const. art. 1, § 11, and Code Cr. Proc. art. 342, *held* not shown.

Appeal from Criminal District Court No. 2, Dallas County; C. A. Pippen, Judge.

Application by William Lester Crawford for bail. From order denying bail, he appeals. Reversed and bail granted.

Jed C. Adams, Alvin Owsley, and Robert B. Allen, all of Dallas, for appellant.

Shelby M. Cox, Criminal Dist. Atty.; of Dallas, and Chas. L. Black, Tom Garrard, State's Atty.. and Grover C. Morris, Asst. State's Atty., all of Austin, for the State.

HAWKINS, J.   This is an appeal from an order of the judge of criminal district court No. 2 of Dallas county, denying relator bail

On the morning of September 11, 1924, as Paul M. O'Day was approaching the elevator in the building where his office was located relator called his name, and as O'Day turned towards him in response to the call relator shot him several times with a pump shotgun. Immediately after the shooting relator said, "You can't insult my mother."

One of the propositions urged here is that the evidence raised the issue of manslaughter predicated on an insult to a female relative, and a killing upon the first meeting after learning of the insult (article

---

⬤⟝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

1132, subd. 4, and article 1133, Pen. Code), and that this issue being in the case relator is entitled to bail as a matter of right.

A suit had been filed contesting the will of Colonel W L. Crawford by the terms of which his wife, relator's mother, was the principal legatee. Mrs. Crawford and relator were party defendants in the suit, the contest being based upon averment of undue influence exerted by Mrs. Crawford to secure the will to be executed in her favor.

The evidence of one Willis Evans had been taken by oral deposition which contestants claimed showed undue influence over the testator by Mrs. Crawford originating previous to her marriage with him. Upon trial of the case in the district court, certain portions of the deposition were excluded, contestants claiming this was an erroneous ruling on the part of the trial court. Judgment was entered in the district court in favor of the proponents of the will and the case was appealed to the Court of Civil Appeals of the Fifth Supreme Judicial District. Mr. O'Day, as one of the attorneys for contestants, wrote the brief in which he was urging to the appellate court that the lower court committed error in excluding certain portions of the evidence in the deposition. He set out in the brief said evidence, and drew inferences therefrom upon which he based certain propositions of law. Relator secured a copy of the brief the day before the killing, read it that night, and became enraged over it. In talking to his mother late in the night he mentioned the brief in general and referred especially to the evidence of the witness Evans. Although an attorney himself and a party to the suit relator does not appear to have read the brief prior to the night before the killing which occurred early the next morning. The evidence is conflicting whether he was present and heard the oral deposition of Evans taken. It is upon statements in the brief upon which the charge is predicated that deceased had insulted relator's mother. We think it unnecessary to set out the testimony of Evans, but based thereon O'Day wrote in the brief as follows:

"Such testimony, in conjunction with other testimony introduced, is indicative of relations between the testator and the defendant, prior to their marriage, of a different and less honorable and conventional character than those which usually precede the marriage of an honorable man and an honorable woman, and which not infrequently explain and precede the marriage of a man of the age of the testator, at that time, to wit, 58, with a woman of the age of the defendant at such time."

And again:

"That the testimony is indicative of unconventional relations between the testator and the defendant probative of the fact, nature, existence and origin of influence on the part of the defendant over the testator and of its undue character."

And again·

"Such testimony, relating as it does to unconventional dress at an unconventional hour in the morning, when the testator was departing in an intoxicated condition, requiring assistance, from the house of the defendant prior to the marriage, is indicative of unconventional relations probative of the fact, nature, extent, and origin of influence on the part of the defendant over the testator, and of the undue character of such influence."

We quote from Walker v. State, 89 Tex. Cr. R. 76, 229 S. W. 527, the following, which appears applicable to the matter now under consideration:

"In the case before us, if the language imputed to the deceased by the appellant was insulting language within the meaning of the statute, it was the duty of the court to inform the jury that if used by the deceased, as detailed by the appellant, it constituted adequate cause to reduce the offense of manslaughter Where the testimony shows the use of language by the deceased concerning the female relative of the accused, its interpretation is primarily for the trial judge; that is to say, he is called upon to determine the import of the language. If, given its natural or obvious meaning, the language signifies an insult toward the female relative, it then becomes the duty of the court to recognize this meaning in his charge, and tell the jury that if the language was used, or if the appellant was informed that it was used, as the case may be, that adequate cause existed by reason thereof. If, however, the language used is not susceptible of the construction that it was an insult toward the female relative, then it is not the duty of the court to tell the jury that it was adequate cause. This is illustrated by the numerous instances in which it has been decided by the trial judge that language obviously insulting to the accused was not within the statute touching insulting language toward a female relative, and this decision upheld upon appeal. Simmons v. State, 23 Tex. App 653, 5 S. W. 208; Levy v State, 28 Tex. App 203, 12 S. W. 596, 19 Am. St. Rep. 826; Hayman v. State, 47 Tex Cr. R. 263, 83 S. W. 204. If the meaning of the language is dubious, then its import, in the opinion of the writer, would be a matter which, under appropriate instructions, the jury would be called upon to determine."

[1] From the language used in the brief we think it clear that deceased was not expressing his personal view relative to the matter, but was within the record and drawing deductions from the evidence. We know of no authority holding that under such circumstances the attorney could be said to have offered an insult to the female relative regarding which the evidence was given. If the attorney had departed from the record and expressed his personal view an entirely different question would be presented, but, as long as he was within the record, and

stating reasonable conclusions therefrom, he could not be held to have uttered an insult to relator's mother, upon which could be predicated manslaughter. Manslaughter under the general statute (arts. 1128, 1129, P. C.) does not arise, it appearing from the record now before us that no provocation was given by the deceased at the time of the killing.

[2] There is another phase of the case, however, to which we advert: The Bill of Rights, section 11, art. 1, Constitution of Texas, provides:

"All prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident."

Article 342, C. C. P. reads:

"In capital cases, where the guilt of the accused is evident, bail cannot be allowed. In all other cases, the accused is entitled to bail as a matter of right."

Upon the state rests the burden to show proof evident. Ex parte Newman, 38 Tex. Cr. R. 164, 41 S. W. 628, 70 Am. St. Rep. 740; Ex parte Firmin, 60 Tex. Cr. R. 368, 131 S. W. 1113. It is said that proof is evident "if the evidence is clear and strong, leading a well guarded and dispassionate judgment to the conclusion that the offense has been committed; that the accused is the guilty agent; and that he would probably be punished capitally if the law is administered." Harris' Const. of Texas, p. 107; see, also, Ex parte Smith, 23 Tex. App. 100, 5 S. W. 99; Ex parte Young, 87 Tex. Cr. R. 413, 222 S. W 242, and cases therein cited.

[3] Whether a killing be committed upon express or implied malice does not further concern the courts ordinarily, since the degrees of murder have been abolished by statute, but as only murder committed upon express malice was punishable capitally under the old law this court has uniformly indulged the practice, where application for bail upon a murder charge was being considered, of endeavoring to determine whether the case in hand is a killing upon express malice, that is, a killing which results from an act done in the pursuance of a formed design with a sedate and deliberate mind to kill the deceased or to inflict upon him by an unlawful act some serious bodily harm which might probably result in depriving him of his life. Ex parte Francis, 91 Tex. Cr. R. 398, 239 S. W. 957; Ex parte Hicks, 95 Tex. Cr R. 450, 254 S. W. 1109; Ex parte Purvis, 96 Tex. Cr. R. 490, 258 S. W. 478; Stephens v. State, 93 Tex. Cr. R. 164, 245 S. W. 687.

We quote part of section 425, Branch's Crim. Laws of Texas:

"If the design to unlawfully kill is formed while the mind is incapable of cool reflection, not produced by such adequate cause as would reduce the homicide to manslaughter, and such design is carried into effect before there has been time for the passion to cool to the extent of contemplating the consequences of the act, the homicide, however unjustifiable and unwarranted it may be, is murder in the second degree."

[4] The text is supported by McCoy v. State, 25 Tex. 33, 78 Am. Dec. 520; Farrar v. State, 42 Tex. 265; Rice v State, 51 Tex. Cr. R. 255, 103 S. W. 1156; Halbert v. State, 3 Tex. App. 656; Sherar v. State, 30 Tex. App. 349, 17 S. W. 621; Atkinson v. State, 20 Tex. 522. From these authorities it is manifest that the state of accused's mind at the time of the killing, the cause producing it, the state of his mind when the design to kill was formed, the continuing condition of his mind from that time until the design was executed, and the manner of carrying it out, are all matters for consideration in determining whether a killing was upon express malice. A sedate and deliberate mind, as well as the formed design, must accompany the act of the slayer in the commission of the homicide in order to constitute murder upon express malice. Sherar v. State, supra. There is evidence in the present case to the effect that the mind of the relator became inflamed with passion by reason of the publication of the brief to which reference has been made, and the expressions contained therein which have been adverted to and some of which have been quoted. Whether the state of mind occasioned by the cause mentioned, deprived relator of the power, for the time being, of the deliberation requisite to express malice, or whether a deliberate mind accompanied the act of relator in slaying the deceased, are proper subjects of inquiry for the jury, as well as the time elapsing between forming the design and the consummation of the act. Rice v. State, 51 Tex. Cr. R. 255, 103 S. W. 1156.

The questions of fact suggested, namely, the state of mind in which the design to kill the deceased was formed by relator, the condition of mind in which he committed the act, considering, under all the circumstances, the lapse of time between the provocation and the act, are matters depending upon the evidence which the jury will be compelled to weigh and appraise. We have reached the conclusion that there is not revealed from the record now before us proof evident of a capital offense in the sense that bail should be denied.

The judgment of the trial court is reversed and bail granted in the sum of $20,000.