WILLIAM LESTER CRAWFORD V. THE STATE.

No. 9468.    Delivered May 26, 1926.

Rehearing withdrawn November 17, 1926.

1.—Manslaughter — Evidence — After Argument Begun — In Discretion of
    Court.

Where, on a trial for murder, which resulted in a conviction of man-
slaughter, after the argument had begun appellant proffered a witness by
whom he could have shown corroboration of his defense of manslaughter,

no error is shown in the refusal of the court to permit said witness to then testify.

### 2.—Same—Continued.

Our statute authorizes the admission of testimony after argument is begun, but lodges the discretion to admit or reject same within the sound discretion of the trial court, and before this court will revise the action and ruling of a trial judge in such matters, and pronounce the same erroneous, it must clearly appear that the trial judge has abused the discretion confided to him by law, and that thereby the defendant has probably suffered injury to his legal rights. See Code of Crim. Proc., Art. 718. Following Stone v. State, 91 Tex. Crim. Rep. 313, and numerous other cases cited in this opinion.

### 3.—Same—Continued.

Where appellant defended upon the theory that he was not guilty of a higher degree of homicide than manslaughter, and was convicted of manslaughter, the refusal of the court to permit a witness to testify in corroboration of his theory of manslaughter, would not warrant the reversal of his case, because the punishment imposed was the maximum. The hypothesis that on another trial the jury may be more strongly convinced by the cumulative evidence, and may give a smaller punishment, does not appeal to this court. To set aside the solemn verdict of a jury on such a purely speculative proposition, would be to open the door to most pernicious and disastrous consequences.

### 4.—Same—Evidence—Harmless, If Error.

Where, on his trial, appellant predicates his defense of manslaughter upon statements contained in a brief, written by deceased, in which the deposition of a witness containing statements reflecting upon the mother of the appellant, were introduced by the appellant, on his present trial, other portions of such deposition showing appellant's presence when such deposition was taken, rebutting his testimony and supporting the theory of the state that he was guilty of murder, and bearing only upon the issue of murder, the admission of this part of the deposition was harmless, if error, in view of his conviction of manslaughter. Following Eason v. State, 232 S. W. 300, and other cases cited.

### 5.—Same—Evidence—Properly Admitted.

Where appellant defended on the theory of sudden passion, etc., aroused by his reading a brief written by the deceased in a law suit, in which appellant was a party defendant, and an attorney of record in the case, containing what appellant contended was a statement reflecting upon his mother, and which he claimed came to his knowledge for the first time on the night before the homicide, there was no error in permitting the state to introduce a motion for a new trial filed in said cause more than a year before the homicide, containing the identical statement complained of by appellant appearing in the brief, which tended to show that appellant was for a long time familiar with the statement in the brief. See Wharton's Crim. Evidence, Vol. 2, Secs. 570 and 607.

### 6.—Same—Requested Charges—Refusal of, Harmless.

Where appellant submitted special charges embracing his theory of the law of manslaughter, as raised by the evidence, and the jury convicted him

of manslaughter, the refusal of such requested charges would not present a serious error, even though they might have properly been given by the court.

### 7.—Same—Argument of Counsel—Opening Statement—No Error Shown.

Where the state's counsel was permitted to make an opening statement concerning what the state expected to prove, and the court explained to the jury that such opening statement was not to be regarded as testimony, and that they should decide the case solely on what the witnesses testified to and nothing else, there was no serious error in the failure of the state to prove all of the matters presented in such statement.

### 8.—Same—Charge of Court—Limiting Testimony—No Material Error.

Where, in his charge limiting the jury's consideration of the testimony of a defense witness, the court used the expression "if considered at all" in such charge, no material error is shown, said testimony having been as to remarks made by deceased in reference to appellant's mother long prior to the homicide, and which were never communicated to the appellant.

### 9.—Same—Conduct of Trial—Providing Seat for Widow of Deceased—No Error.

Providing seats for the widow and daughter of the deceased at a place in the court room, and not at an unusual place, where they could see and hear what took place during the argument, was not improper. Neither of said persons is shown to have acted in such way as to prevent any juror from exercising his fair judgment in the matters discussed and submitted.

### 10.—Same—Evidence—Held, Sufficient.

There was no controversy in the testimony as to the killing of deceased, who was unarmed, by the appellant, with a shotgun, loaded with buckshot. No issue of self-defense was presented on the trial. Appellant defended solely upon the issue of sudden passion, etc., aroused by his discovering a brief, written and filed by deceased, in a law suit, contesting the will of appellant's father, in which was contained excerpts from the depositions of a witness, taken in said law suit, which appellant claimed reflected upon his mother. The case was fairly and ably presented in the charge of the court. The jury passed upon the issues of fact, and under the testimony could not do less than convict him of manslaughter, and their judgment is affirmed.

#### ON REHEARING.

### 11.—Same—Motion to Withdraw Rehearing—Granted.

Appellant having filed, in writing, duly verified by his affidavit, a request that his motion for rehearing be dismissed, it is ordered that the motion be granted, and the motion for rehearing be dismissed.

Appeal from the Criminal District Court No. 2 of Dallas County. Tried below before the Hon. C. A. Pippen, Judge.

Appeal from a conviction for manslaughter, penalty five years in the penitentiary.

The opinion states the case.

*Alvin M. Owsley, Jed C. Adams, J. E. Newberry, Grover C. Adams, Robt. B. Allen, Jr., W. B. Harrell* and *Robt. B. Allen* of Dallas, for appellant.   On the rejection of testimony after argument begun, appellant cites:

  Bostick v. State, 11 Tex. Crim. App. 126.
  Cook v. State, 11 Tex. Crim. App. 19.
  Donahoe v. State, 12 Tex. Crim. App. 297.
  Hewitt v. State, 10 Tex. Crim. App. 501.
  Arrington v. State, 20 S. W. 927.
  Elsworth v. State, 104 S. W. 903.
  Lewandowski v. State, 44 Tex. Crim. Rep. 511.
  Kimbrough v. State, 270 S. W. 862.
  Stone v. State, 239 S. W. 209.

*W. B. Hamilton* of Dallas, *Shelby S. Cox,* District Attorney, of Dallas County; *Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction in Criminal District Court No. 2 of Dallas County of manslaughter, punishment fixed at five years in the penitentiary.

We notice the errors complained of in the order in which same are presented in appellant's brief.

The first question is the refusal of the trial judge to stop the argument in order to allow appellant to put on the witness stand a Mrs. Fry, whose testimony came to light after the argument was begun.   Statutory provision is made for such cases.   See Art. 718, Vernon's C. C. P.   The decisions are to the effect that the court's action in this particular is within the sound discretion of the trial judge.   We are thus called on to decide if there has been an abuse of such discretion.   Unless the testimony thus rejected would appear likely to lead to a decision favorable to the accused upon some disputed issue, we could not hold its rejection an abuse of discretion.   The only issue to which said testimony could in any event be pertinent was whether the case be one of murder or manslaughter.   The state sought conviction for murder; the defense contended that guilt was of no graver offense than manslaughter.   As reducing his offense to manslaughter, appellant swore that just before the killing he asked deceased regarding matters deemed by him insulting conduct and language of deceased toward appellant's mother, to which deceased replied, in effect, admitting that he had said and done the things asked about.   This answer and conduct of deceased

was relied on by appellant as creating uncontrollable rage, resentment, etc., in his mind and as reducing the offense to manslaughter. The testimony of Mrs. Fry was corroborative of that of appellant as to his testimony concerning what was said and done between him and deceased at the time just mentioned. The jury's acceptance of appellant's version of this occurrence is evidenced by their verdict of manslaughter.

The issue as to the degree of homicide being thus decided favorably to appellant, unaided by the testimony of Mrs. Fry, we are forced to conclude that by its rejection no harm resulted to appellant, and no abuse of discretion can be inferred. This court has never reversed cases because of matters which may not be in entire conformity with rules whose strict enforcement is discretionary, except there be tangible ground for believing that injury resulted to the accused from such ruling. In Stone v. State, 91 Tex. Crim. Rep. 313, speaking through Presiding Judge Morrow, we said:

"It is within the discretion of the trial court to refuse to hear testimony proffered after the beginning of the argument, and only when the discretion is clearly abused will the action be reviewed. Code of Crim. Proc., Art. 718; Toler v. State, 41 Tex. Crim. Rep. 659, and other cases collated in Vernon's Tex. Crim. Statutes, Vol. 2, pp. 396 and 397."

In Elsworth v. State, 52 Tex. Crim. Rep. 1, cited by appellant, discussing abuse of discretion, we said:

"The case will not be reversed, unless it appears that this discretion has been abused, that is, as we take it, that under all the circumstances, it appears that the appellant, without fault on his part, has been prejudiced by the refusal of the court to admit the testimony. See authorities cited in White's Code Crim. Proc., par. 766, sub-division 2."

In Dement v. State, 39 Tex. Crim. Rep. 271, we said: "It is a matter very much in the discretion of the court to admit testimony after the evidence has been closed, and unless the refusal of the court to allow such testimony is shown to be prejudicial, a case will not be reversed on that account." In Testard v. State, 26 Tex. Crim. App. 260, for this court Judge Willson said:

"Before this court will revise the action and ruling of a trial judge in such matters, and pronounce the same erroneous, it must clearly appear to us that the trial judge has abused the discretion confided to him by law, and that thereby the defendant has probably suffered injury to his legal rights."

See also Farris v. State, 26 Tex. Crim. App. 105. In Tread-

way v. State, 1 Tex. Crim. App. 668, the following is quoted with approval: "It is believed that the discretion thus confided to the district court was intended not to be a subject of revision by the appellate court, unless it be made to appear that the discretion has been abused to defeat the ends of justice," and in the same opinion we quoted from Meredith v. State, 40 Texas, 483, as follows: "If the evidence had been before the jury, it would not have been a ground for a different verdict."

We have carefully analyzed each case cited by appellant in his able brief and find none holding contrary to what we have above stated. The jury fixed the maximum penalty for manslaughter. It is suggested in appellant's brief that had appellant been thus corroborated by Mrs. Fry, the jury might have given him a less penalty for said offense. To set aside the solemn verdict of a jury on such a purely speculative proposition, would be to open the door to most pernicious and disastrous consequences. In every case where the record evidenced acceptance of mitigating defensive theories—but a failure to fix the minimum penalty—the courts would be called upon, on precedent, to accept the proposition that newly discovered cumulative testimony supporting such mitigating theory would demand grant of new trial, or reversals by this court if new trials be refused by the lower court, upon the nebulous idea that another jury might give a lower penalty. To concretely illustrate: A kills B, contending that B insulted his wife, and for that reason he insists that he is guilty of no more than manslaughter. The jury convict of that offense but fix the maximum penalty for manslaughter. In support of his motion for new trial A produces C, D and F as newly discovered witnesses whose testimony, if admitted, would support the proposition that B insulted A's wife. If appellant's contention here be sound, then A's contention would be sound, and like contentions in similar cases would necessarily result in the granting of new trials in all. The hypothesis that on another trial the jury may be more strongly convinced by cumulative evidence and may give the accused a smaller penalty, does not appeal to this court. We must give ear to real and not fancied injuries. Nor do we believe the fact that the court submitted three grounds upon which manslaughter might be predicated, to lend strength to appellant's claim, but rather to us it seems to further relegate it to the domain of speculation.

The state introduced certain parts of the deposition of one Evans, a witness in a case of contest over the will of appellant's

father, in which case deceased was an attorney for the contest-
ants and Evans was a witness by deposition for the client of
deceased. From the brief prepared by deceased in said will
contest case appellant had introduced in his behalf that part of
the brief containing the testimony of Evans together with the
argument and deductions of deceased based thereon. This was
introduced by appellant as part of the insulting conduct and
words relied on in this case. Appellant objected to the intro-
duction of the testimony of Evans by the state. If we under-
stand his objections set out in bills Nos. 3 and 3a, same are to
that part of the deposition of Evans which contains a stated
agreement. Said bills show that during the taking of his deposi-
tion Evans was asked to state who were present during such
taking, and that in his answer he named three persons and dis-
claimed knowledge of the names of the others. Mr. Locke,
attorney for the contestants in the will case, who was interro-
gating Evans, said:

"It is agreed then that while the deposition has been taken,
in addition to Mr. Paul O'Day, Mr. Eugene Locke, Mrs. Kate
Lamar Crawford, named by the witness, there have been Mr.
Alex S. Coke, George A. Robertson and William Lester Craw-
ford, one of the defendants, and the stenographer taking the
deposition.

"Q. Have they been present all during the time that the depo-
sition has been given?

"A. Yes, sir, when any questions have been asked these others
have all been here."

It was shown by other testimony that the entire deposition of
Evans covered 171 pages, and that this agreement just quoted
appeared on page 156 thereof; also that the direct interrogatories
to Evans were short—those propounded in cross-examination
were lengthy; also after the cross-examination of Evans ended
said Attorney Locke took the witness on re-direct examination.
To our minds there seems small doubt of the fact from appel-
lant's own testimony given in this case, that he was present
during all of Mr. Locke's re-direct examination of said Evans;
in fact, appellant so swore, but said if the agreement as to who
were present during the taking of said deposition was made in
his presence and hearing; that he did not hear it, or if he did he
attached no importance to it, that possibly it did occur. The
state was seeking to show that the testimony of Evans which
formed the basis for the objectionable part of the brief of de-
ceased was known to and heard by appellant at the time the

deposition was taken. Appellant was a party to the contested will suit in which the deposition was being taken and in which said agreement was made. A number of witnesses swore to his presence during the entire taking of said deposition. Appellant's mother testified for the defense in this case and said she had no recollection of hearing the agreement referred to, but did not affirm that same was not made. We fail to grasp the force of appellant's objections to this matter. If on appellant's trial in the instant case, what was said and done by him, or any party or witness in some other case, became pertinent to any issue herein, the fact that such former matter was to be found in a deposition could not be held to deprive the court before whom the present inquiry was pending, of its right and power to use such deposition as a basis for, or part of its investigation here. As stated above, in this case appellant first introduced a part of the very deposition that he now appears to contend should be held inadmissible. We are of opinion that the state having shown that the agreement referred to was made in appellant's case, and in his presence and hearing, same was competent as affecting, if the jury believed it did so, the question of his having heard the testimony of Evans which he now asserts reflected on his mother, and to thus show, as far as such agreement and testimony would show, that he did not in fact derive his first knowledge of such reflective testimony from the brief of deceased which appellant claims to have read the night before the homicide. Another view of this matter is pertinent. The state sought only by this testimony to defeat the reduction of the grade of appellant's offense to that of manslaughter. The fact that appellant, at a time anterior to his reading of the brief of deceased, had heard Evans' testimony, was a circumstance material only as affecting the reduction of said offense to the crime of manslaughter. It transpired that the jury accepted the defensive view of the grade of the offense, and by finding appellant guilty only of manslaughter, rendered harmless the admission of said testimony and thus eliminated any error, if, in fact, the matter be inadmissible, to which we do not assent.

Eason v. State, 232 S. W. 300; Haynie v. State, 2 Tex. Crim. App. 168; Preston v. State, 4 Tex. Crim. App. 200; Bigby v. State, 5 Tex. Crim. App. 101; Somerville v. State, 6 Tex. Crim. App. 433; Jones v. State, 7 Tex. Crim. App. 457; Evans v. State, 13 Tex. Crim. App. 225; Logan v. State, 17 Tex. Crim. App. 50; King v. State, 42 Tex. Crim. Rep. 108; Brown v. State, 87 Tex. Crim. Rep. 261; Porter v. State, 86 Tex. Crim. Rep. 23; Mucker

v. State, 229 S. W. 328. Any assumption that the jury may have appropriated this testimony as affecting appellant's credibility seems wholly unwarranted. He had not in whole or in part denied that the agreement was made, but said if it was he did not hear it or did not attach any importance to it. From no angle can we see how the evidence as to such agreement could have injuriously affected appellant's case.

The state offered in evidence part of a motion for new trial made in said contested will case, which was identical with those parts of the brief written by deceased, which had been offered in evidence by the appellant. Said motion was filed in the office of the district clerk in July, 1923, before the killing some time during the fall of the following year. Discussing appellant's objection to this, we observe that if our opinion in Ex Parte Crawford, 265 S. W. 906, is sound law, wherein we said:

"From the language used in the brief we think it clear that deceased was not expressing his personal view relative to the matter, but was within the record and drawing deductions from the evidence. We know of no authority holding that under such circumstances the attorney could be said to have offered an insult to the female regarding which the evidence was given. If the attorney had departed from the record and expressed his personal view an entirely different question would be presented, but as long as he was within the record, and stating reasonable conclusions therefrom, he could not be held to have uttered an insult to relator's mother, upon which could be predicated manslaughter."

Then the state had a right to meet appellant's proof as to the contents of the brief of deceased, the reading of which the night before the homicide was claimed by appellant to have aroused his passion—by introducing the motion for new trial whose grounds are specifically stated in Art. 1612, Vernon's Civil Statutes, to constitute the assignments of error on appeal—the introduction of said motion containing the identical language of the brief serving to show that the maker of the brief was "within the record" in the preparation of his brief, and was merely restating the assignments of error contained in the motion for new trial. Further, appellant was a party to the contested will case and an attorney of record therein representing himself, and his rights were disposed of in the judgment therein rendered. The contestants' motion for new trial was a necessary part of the judgment roll. We are not at all sure that as such, it would not be prima facie admissible against any party to such suit in a

pertinent matter wherein such party asserted ignorance of its contents, subject, however, to the general rule that matters prima facie admissible may be rebutted.   See Wharton's Crim. Evidence, Vol. 2, Sec. 570; also Sec. 607, id., and authorities cited.

In the main charge the court told the jury that in determining whether the case be one of manslaughter, they should take into consideration all the facts and circumstances in evidence, and in a special charge asked by appellant and given they were told that it was immaterial whether deceased actually wrote the brief in question or not; that if appellant was so informed and believed that he wrote it this would be sufficient.   We think the two special charges relating to this matter which were refused were on the weight of the evidence.   In any event the conviction for manslaughter only, makes the matter of the contention as to said charges of no merit.

We are not in accord with any view as to the seriousness of appellant's complaint at the opening statement made by the District Attorney concerning what the state expects to prove about the good reputation of the deceased.   The state did not make proof of such matter.   The court told the jury that the opening statement was not to be regarded as testimony.   He also told them that they should decide the case solely on what the witnesses swore and nothing else.

Nor do we believe that the insertion of the words, "if considered at all," in that portion of the charge limiting the jury's consideration of the testimony of defense witness, Strawbridge, to be of any injury to the rights of appellant.   The matters testified to by Strawbridge were concerning remarks made by deceased in reference to appellant's mother long prior to the homicide and which had never been communicated to appellant.

We do not believe the trial court would have been justified in refusing to the widow and daughter of deceased seats at not unusual places where they could hear and see what took place during the argument and the trial.   Neither of said persons is shown to have acted in any such way as to prevent any juror from exercising his fair judgment in the matters discussed and submitted.

The evidence supports the judgment.   Deceased was an attorney whose firm represented the contestants in an effort to break the will of appellant's father.   The oral deposition of the negro Evans was taken in preparation for the trial of said civil case in the district court.   The witness swore to facts which were deemed reflective upon appellant's mother.   On the trial the court rejected the deposition of the negro.   Such action on his

part was made the chief ground of the motion for new trial, and of an appeal when the motion for new trial was overruled. Appellant claimed that the night before the killing he read for the first time a brief which he had been informed was prepared by deceased for use in said appeal; that it greatly aroused him, that he did not sleep; that he took a gun the next morning and sought deceased for the purpose of getting him to withdraw said brief. Meeting deceased, as testified by appellant in substance, he asked him if he intended to reflect on his mother by what was said in the brief, and receiving an affirmative answer, he shot and killed deceased. Appellant is represented by able counsel who doubtless have given his case their most careful, thoughtful effort and study. We cannot agree with them that there are reversible errors in this record, and the judgment will accordingly be affirmed.                                          *Affirmed.*

ON APPELLANT'S APPLICATION TO DISMISS MOTION FOR
REHEARING.

MORROW, PRESIDING JUDGE.—The appellant having filed in writing, duly verified by his affidavit, a request that his motion for rehearing heretofore filed be dismissed, it is ordered that the motion be granted, and that the motion for rehearing be withdrawn and dismissed, and that the mandate of this court be at once issued upon the original judgment affirming the conviction.                                  *Withdrawn and dismissed.*