NO.
12-02-00296-CR

 

                     IN THE COURT OF APPEALS 

 

          TWELFTH
COURT OF APPEALS DISTRICT

 

                                TYLER,
TEXAS

EZELL WOODS,                                               '                 APPEAL FROM THE
SECOND

APPELLANT

 

V.                                                                         '                 JUDICIAL
DISTRICT COURT OF

 

THE STATE OF
TEXAS,

APPELLEE                                                       '                 CHEROKEE COUNTY,
TEXAS

                                                                                                                                                           


                                                     MEMORANDUM
OPINION

Ezell Woods (AAppellant@) was charged by indictment with five counts of delivery of crack
cocaine.  The jury found Appellant guilty
of the offenses charged, and assessed a sentence of two years in a state jail
facility on counts one, two, and three, and twenty years on counts four and
five.  Appellant presents eighteen issues
on appeal.  We affirm the trial court=s judgment.

 

                                                               Background








Richard Garner (AGarner@) and John Hensley (AHensley@), both investigators for an East Texas drug task force, hired Marcus
Tatum (ATatum@) as a paid informant to set up drug purchases for the task
force.  On December 7, 2000, Garner and
Hensley picked up Tatum to attempt a drug buy for them from Appellant.  Garner gave Tatum fifty dollars to buy
crack.  Hensley searched Tatum for drugs
while Garner gave Tatum a cassette recorder and a tape to be used to record the
drug purchase.  Hensley and Tatum drove
to Appellant=s house.  Hensley waited in the
car while Tatum went inside to buy the drugs. 
Hensley saw Appellant come to the door and admit Tatum.  When Tatum returned, he gave Hensley three
rocks of crack cocaine and the tape recorder. 
They then drove to meet Garner. 
Hensley again searched Tatum and confirmed that he had no other drugs or
cash.

On December 8, 2000, they repeated the process.  Garner gave Tatum sixty dollars and the
recorder.  Hensley dropped Tatum off near
the house and parked down the street out of sight from the house.  Tatum came back with three rocks of crack,
ten dollars in change, and a scrap of paper with a phone number on it.

On December 14, 2000, the officers gave Tatum $100 and a recorder and
sent him to buy crack from Appellant. 
Tatum returned with five rocks of crack that he said he had bought from
Appellant.  On December 28, Tatum took
$100 to Appellant=s house and came out with six rocks of crack.  On January 6, 2001, Tatum bought six rocks of
crack bought with $150 given him by the officers.  On this occasion, Tatum was given a recorder
and a transmitter.

Later in January during the course of another drug purchase,
investigator Hensley found that Tatum was hiding crack in his mouth. He
presumably bought the crack with the State=s money.  When he discovered the
cocaine during the customary post-purchase search of Tatum, Hensley arrested
him.  Tatum jumped from the patrol car
and fled resulting in a chase during which two police cars collided.

Based upon the evidence obtained from Tatum, Appellant was indicted
for five counts of crack cocaine delivery. 
The case was tried to a jury. 
Although Hensley saw Appellant admit Tatum to his house, neither of the
investigators saw any of the drug transactions. 
One of the audio tapes made by Tatum during the drug purchases was
played for the jury.  Although the trial
judge admitted the tapes made of the other purchases, they were not played for
the jury.[1]  Gerald Kerr (AKerr@), another drug task force investigator, testified to the chain of
custody of the cocaine bought by Tatum. 
A DPS chemist, Keith Pridgen (APridgen@), testified to the composition and weight of the five samples.  Appellant did not testify.

 

        Sufficiency of the Corroboration of Informant=s Testimony








In his third issue, Appellant challenges the sufficiency of the
corroboration of the drug informant=s testimony.  Since September 1,
2001, our Code of Criminal Procedure has provided as follows:

 

(a) A defendant may not be convicted of an
offense . . . on the testimony of a person who is not a licensed peace officer
. . . but who is acting covertly on behalf of a law enforcement agency . . .
unless the testimony is corroborated by other evidence tending to connect the defendant
with the offense committed.

(b) Corroboration is not sufficient for the
purposes of this article if the corroboration only shows the commission of the
offense . . . .

 

 

Tex. Code Crim. Proc. Ann. art. 38.141 (Vernon Supp. 2002).

The standard for reviewing the sufficiency of the corroboration of a
confidential informant is the same as that for the review of the sufficiency of
the corroboration of accomplice testimony. 
See Young v. State, 95 S.W.3d 448, 451 (Tex. App.BHouston [1st Dist.] 2002, pet. ref=d); Cantelon v. State, 85 S.W.3d 457, 460 (Tex. App.BAustin 2002, no pet.).  In
determining the sufficiency of the Aother evidence tending to connect the defendant with the offense
committed,@ the court must eliminate all evidence by the informant and determine
whether other inculpatory facts and circumstances tend to connect the accused
to the crime charged.  Young,
95 S.W.3d at 451.  AWe must view the corroborating evidence in the light most favorable to
the verdict.@  Cantelon, 85
S.W.3d at 461.  The tends-to-connect
standard does not present a high threshold.  Id. 
While individually these circumstances might not be sufficient to
corroborate the informant=s testimony, taken together, rational jurors could conclude that the
sum of the other evidence taken together sufficiently tended to connect
Appellant to the offense. See id. at 460-61.  The non-informant evidence does not have to
establish the guilt of the defendant beyond a reasonable doubt, but it does
have to connect the defendant with the offense. 
Young, 95 S.W.3d at 451.

Appellant argues the corroboration was insufficient because there is
no direct evidence that Tatum was a reliable informant while there is evidence
that Tatum was less than reliable.  We
know of no requirement under article 38.141 that there be direct evidence of
the informant=s reliability akin to the proof necessary to obtain a search or arrest
warrant based on information provided by a confidential informant.  The credibility of the witnesses is the sole
province of the jury.  Jones v.
State, 944 S.W.2d 642, 648-49 (Tex. Crim. App. 1996).








Appellant also argues that although his voice is identifiable on one
of the audio tapes, the recording does not show that a drug transaction
occurred.  Appellant relies on Young
wherein the conviction was reversed because there was no evidence save
that of the informant that connected the Appellant with the offense.

Our case differs from Young in several respects.  In Young, the informant
proceeded to the defendant=s home to purchase drugs in his own car.  No one saw him enter the house.  The informant identified a photo of the
defendant=s house where he bought the drugs, and he also identified the
defendant=s voice on the audio tape recording the drug buy.  Young, 95 S.W.3d at 451.  In the case at bar, Hensley, on one occasion,
drove Tatum to Appellant=s home and waited at the street until Tatum came out of the
house.  Hensley saw Tatum admitted to the
house by Appellant.  On the four other
occasions, Hensley let Tatum out of the car near the school and Tatum proceeded
on foot to Appellant=s house.  Although four of the
five tapes were totally inaudible, Garner was able to identify Appellant=s voice on the tape played for the jury.  Although it is impossible to tell from the
tape that a drug purchase was in progress, Appellant=s voice was recorded between the time Tatum left Hensley with the
money to buy crack cocaine and his return with the drugs a short time
later.  We conclude that the informant=s testimony is corroborated by sufficient other evidence tending to
connect the Appellant to the cocaine purchases. 
Appellant=s issue three is overruled.

 

                                              Sufficiency of the Evidence








In his first, second, and fourth issues, Appellant challenges the
legal and factual sufficiency of the evidence. 
The standard for the review of legal insufficiency claims is whether,
viewing all the evidence in the light most favorable to the prosecution, any
rational jury could have found all the elements of the offense proven beyond
reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-787, 61 L. Ed. 2d
560 (1979); King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000).  In conducting a factual
sufficiency review, the appellate court must sustain the verdict unless a
neutral review of all the evidence, both for and against the challenged
finding, demonstrates that the proof of guilt is so obviously weak as to
undermine confidence in the jury determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof.  Johnson v. State, 23 S.W.3d 1,
11 (Tex. Crim. App. 2000).   Based upon
our review of the record, we conclude that the evidence presented by the State
is legally sufficient to sustain Appellant=s convictions.  Since Appellant
presented no contrary evidence, we must consider only if the proof of guilt is
so obviously weak as to undermine confidence in the verdict.

The indictment charged five separate transactions.  The first transaction occurred on December 7,
2000.  Investigator Garner testified that
on that date he gave Tatum fifty dollars to purchase drugs together with a tape
recorder to record the purchase.  When
Hensley returned with Tatum, Hensley gave Garner the three rocks of crack.  Hensley testified that he took Tatum to
Appellant=s house and searched Tatum before he sent him into Appellant=s house to buy drugs.  He saw
Appellant come to the door and admit Tatum. 
Tatum returned shortly and gave Henley the rocks of crack he had just
bought.  Hensley searched Tatum again and
found no other drugs.  Tatum told the
jury that, on that date, he bought crack from Appellant.

The next night, December 8, Hensley let Tatum out of his car and
parked down the street out of sight of Appellant=s house.  Tatum was given sixty
dollars and returned shortly to Hensley=s car with three rocks of crack and ten dollars in change.  He also had a piece of paper with a number on
it which Tatum said was a beeper number Appellant had given him.

On December 14, according to Garner, Tatum was given $100 and he
returned with five rocks of crack. 
Hensley testified that it was a Anormal buy@ and that Tatum returned to Hensley=s car within ten to twelve minutes after being dropped off.  Tatum said he could Akind of@ remember this transaction.

On December 28, according to Garner=s testimony, Hensley picked up Tatum, Garner gave Tatum $100 and a
recorder, Hensley searched Tatum without finding drugs, and Hensley and Tatum
drove to Athe location.@  Hensley told the court that it
was a Apretty standard buy.@  Hensley testified that on all
the occasions after December 7, 2000, he dropped Tatum off, parked 300 yards
down the street at a church parking lot on the corner, then waited
approximately twelve minutes for him to return with the drugs he had bought.  Garner said that he received six rocks of
crack when Hensley and Tatum returned. 
Tatum did not mention buying crack from Appellant on December 28 except
in response to the following final question by the prosecutor on direct
examination:

 

Q.         And
those B all the times that you got there on December
6th, 7th, 14th, 28th and January 1st, I mean January 6th of 2001, all those
times did you buy from Ezell Woods.

 

A.         Yes.








On January 6, 2001, Garner said he gave $150 to Tatum to buy crack
from Appellant.  He also gave Tatum a
recorder.  Hensley, in his testimony,
identified the crack he was given on that date. 
Tatum testified that he bought nine rocks of crack for $150 from
Appellant on January 6, 2001.  Tatum told
the court that this time he gave the nine rocks and the tape recorder to
Hensley.

Officer Kerr, another member of the drug task force, testified that he
had received four evidence envelopes containing what appeared to be crack
cocaine from Garner, and one envelope containing crack from Hensley.  He transmitted all the samples to the DPS lab
in Tyler.  Keith Pridgen, forensic
chemist for the DPS lab, testified to the weight and composition of the five
exhibits given him.

Appellant argues that Tatum=s testimony is inconsistent since he could not remember more than one
buy from Appellant for more than $150. 
He emphasizes Tatum=s failure to provide any details whatsoever about the December 28
purchase.  Appellant lays particular
stress on the informant=s unreliability evidenced by his attempt on a different occasion to
deceive these same officers by hiding drugs in his mouth.

It is, however, axiomatic that it is the fact finder that must resolve
inconsistencies in the testimony and determine the credibility of the witnesses
and the weight to be given their testimony. 
We agree with Appellant that all but one of the audio tapes introduced
in evidence are absolutely inaudible. 
But even if those tapes are disregarded, there remains sufficient
evidence to satisfy the standards for legal and factual sufficiency on all
counts.  Appellant=s issues one, two, and four are overruled.

 

                                                 Amendment of Indictment

In issues five, six, and seven, Appellant contends that the trial
court violated Article 22.10 of the Texas Code of Criminal Procedure and both
the federal and state constitutions by allowing the amendment of the indictment
to alter two offense dates by ten and twelve months.

Appellant=s indictment originally alleged the offense date for count one as
September 25, 2001, and for count two as December 8, 2001.  Prior to trial, Appellant objected to the
amendment on state law and constitutional grounds, and asked that the matter be
returned to a grand jury for review.








Article 28.10 of the Code of Criminal Procedure provides, as follows:

 

(a)        After
notice to the defendant, a matter of form or substance in an indictment or
information may be amended at any time before the date the trial on the merits
commences.  On the request of the
defendant, the court shall allow the defendant not less than 10 days, or a
shorter period if requested by the defendant, to respond to the amended
indictment or information.

 

....

 

(c)        An
indictment or information may not be amended over the defendant=s objection as to form or substance if the
amended indictment or information charges the defendant with an additional or
different offense or if the substantial rights of the defendant are prejudiced.

 

 

Tex. Code Crim. Proc. Ann. art. 28.10(a), (c) (Vernon 2001). 
Article I, section 10 of the Texas Constitution provides that A[i]n all criminal prosecutions the accused . . . shall have the right
to demand the nature and cause of the accusation against him and to have a copy
thereof.@  Tex. Const. art. I, ' 10.  Appellant argues that
amending the indictment substituted two of the drug deliveries alleged in the
indictment returned by the grand jury with an entirely new set of deliveries
approved only by the prosecutors. 
Therefore, he argues, this is a rare instance where changing the date
alleged separate statutory offenses which is not permitted by article 28.10.  Citing Flowers v. State, 815
S.W.2d 724, 728 (Tex. Crim. App. 1991). 
The opinion in Flowers makes clear that an Aadditional or different offense@ as used in article 28.10(c) means a separate statutory offense.  Id.  In a case cited by Appellant, Nichols
v. State, 52 S.W.3d 501 (Tex. App.BDallas 2001, no pet.), the appellate court reversed the conviction
because the indictment was amended to charge possession of methamphetamine
rather than cocaine, a separate statutory offense.  Id. at 504-05.  A variance between the dates of an offense
alleged in an indictment and the dates proven at trial is immaterial.  See Brown v. State, 6 S.W.3d
571, 575 (Tex. App.BTyler 1999, pet. ref=d).  Appellant has cited us to
no case wherein it was held error to correct the date in an indictment.  Nor has Appellant demonstrated that amendment
prejudiced a substantial right. 
Appellant=s issues five, six, and seven are overruled.

 

 








                                                                    Hearsay

In his eighth and ninth issues, Appellant maintains that the trial
court erred in allowing hearsay testimony by one of the investigating officers
that Tatum had identified Appellant in a photo lineup.  We agree that the challenged testimony was
hearsay.  Appellant concedes, however,
that his counsel raised no objection to the testimony.  Therefore, no error was preserved.  But Appellant insists that despite the
failure of his counsel to object, the admission of hearsay lineup
identification testimony was structural trial error constituting fundamental
error.  We disagree.  Identity of Appellant was never an
issue.  Tatum identified Appellant in the
courtroom, stating that he had known him for a long time and was raised with
his two younger brothers.  The admission
of the hearsay testimony did not deprive Appellant of a fair and impartial
trial.  No Almanza fundamental
error analysis is required.  See Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  Appellant=s issues eight and nine are overruled.

 

                                      Ineffective Assistance of Counsel

                                                and
Admission of Evidence

In his tenth issue, Appellant contends that his lawyer=s failure to object to the objectionable hearsay testimony regarding
the photo lineup deprived him of his Sixth Amendment right to effective
assistance of counsel.  Appellant has not
briefed nor argued the issue, and it is overruled.  See Tex.
R. App. P. 33.1(h).

In issues eleven and twelve, Appellant complains that the trial court
should have excluded the five audio tapes as improperly authenticated under
Rule of Evidence 901 or as irrelevant and unreliable under Rule 401.

Appellant raised no objection to the admission of four of the tapes,
State=s Exhibits twelve, thirteen, fifteen, and sixteen.  Therefore, error was waived as to these four
tapes.  Appellant objected to exhibit
fourteen because A[the] tape did not bear this witness= [Garner=s] initials and he did not identify it.@  Appellant=s complaint on appeal does not comport with the objection raised at
trial, and no error is preserved.  See,
e.g., Carmona v. State, 941 S.W.2d 949, 953 (Tex. Crim. App.
1997).  Appellant=s issues eleven and twelve are overruled.








In issue thirteen, Appellant maintains that Athe trial court abuse[d] its discretion by admitting hearsay
statements through Garner that other extraneous drug transactions at [Appellant=s] home led officers to set up undercover purchases.@

The prosecutor asked Garner AOfficer Garner, were there other reasons or information as to why you
went to 208 Ladd Street to attempt to purchase crack cocaine?@  Over Appellant=s hearsay objection, Garner answered, AI was contacted by Jacksonville Police Department advising that there
was a problem at that address.@  The judge instructed the jury
that the statement was offered to show the basis for actions that Garner later
took.  The jury was instructed that they
were not to consider that testimony for the purpose of determining whether or
not what was told him was true.  There
was no objection that the hearsay statement put evidence of extraneous drug
transactions before the jury.

Error in the admission or exclusion of evidence by the trial judge
does not warrant reversal unless an abuse of discretion is established
affecting a substantial right of the defendant from which injury or prejudice
has resulted.  See Tex. R. App. P. 44.2(b); e.g., Crawford v. State, 105
Tex. Crim. 281, 285, 288 S.W. 213, 215 (1926). 
Considering the nature of the testimony, the objection and the limiting
instruction given by the trial judge, we conclude that the trial judge did not
abuse his discretion in admitting the challenged testimony.  Appellant=s issue thirteen is overruled.  E.g.,
Cano v. State, 3 S.W.3d 99, 110 (Tex. App.CCorpus Christi 1999, pet. ref=d); Cormier v. State, 955 S.W.2d 161, 162 (Tex. App.CAustin 1999, no pet.) (statement showing why investigation focused on
particular individual not hearsay if not offered for truth of matter asserted).

In issue fourteen, Appellant complains that the trial court improperly
admitted Hensley=s testimony that the paid informer, Tatum, told him that Appellant did
not want anyone to park in front of Appellant=s house.  Presumably, the
prosecutor elicited this testimony from Hensley to explain why Hensley waited
down the street out of sight during the four later drug buys.  Appellant timely raised a hearsay
objection.  Appellant argues that
evidence that he did not want to draw attention to himself by having heavy
traffic in front of his house demonstrates criminal intent.

We agree that the testimony was inadmissible hearsay.  However, later in the trial, Tatum himself
testified without objection to the same conversation.  Error was cured.  See Brown, 6 S.W.3d at
580.  Appellant=s issue fourteen is overruled.








Appellant, by his fifteenth issue, contends that the trial judge erred
in admitting hearsay evidence of a number said to be Appellant=s pager number.  Appellant
initially preserved error by raising a hearsay objection.  Any error was cured when Tatum later
testified to the same fact without objection.  Id.  Appellant=s issue fifteen is overruled.

 

                                                 Prosecutorial Argument

In his sixteenth, seventeenth, and eighteenth issues, Appellant
complains of the prosecutor=s jury arguments.  Appellant
failed to object at trial to the arguments he now maintains were improper.  A defendant may not complain on appeal about
an erroneous jury argument unless he can show that he objected and pursued his
objection to an adverse ruling.  Cockrell
v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).  Appellant=s issues sixteen, seventeen, and eighteen are overruled.

 

                                                                 Conclusion

Having overruled the eighteen issues presented by Appellant, the judgment
of the trial court is affirmed.

 

 

    BILL BASS 
  

Justice

 

 

Opinion delivered
May 12, 2004.

Panel
consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth
Court of Appeals, Tyler, sitting by assignment.

 

 

 

 

 

 

 

 

 

 

 

 

 

                                                             (DO
NOT PUBLISH)











     [1] We have attempted to listen to the tapes that
were not played, but they are inaudible.